Richard STERNBERG, Plaintiff
Below, Appellant,

v.

Thomas F. O'NEIL, Michael G. O'Neil,
John O'Neil, Shane O'Neil, William M.
Regan, Frank Shakespeare, Hubert J.
DeLynn, John B. Poor, Sr., John B.
Fitzgerald, Kenneth R. Frankl, David S.
Henkel, Richard W. Jencks, James J.
Kerley, Alfred J. Moccia, James T. Mor-
ley, A. William Reynolds, William F.
Spitznagel, Richard B. Tullis, William
B. Walsh, Lester Garvin, Warren J.
Hayford, D. Bruce Mansfield, T.E. Pit-
tenger, John J. Dalton, Defendants Be-
low, Appellees.

and

Gencorp Inc. and RKO General, Inc.,
Nominal Defendants Below,
Appellees.

Supreme Court of Delaware.

Submitted: July 25, 1988.
Decided: Nov. 18, 1988.

Joseph A. Rosenthal and Kevin Gross, of Morris, Rosenthal, Monhait & Gross, P.A., Wilmington, David H. Weinstein (argued), Harold E. Kohn, Stuart H. Savett and Stanley M. Shur, of Kohn, Savett, Klein & Graf, P.C., Philadelphia, Pa., Steven R. Rivkin, Washington, D.C., for appellant.

R. Franklin Balotti and C. Stephen Bigler, of Richards, Layton & Finger, Wilmington, Garrard R. Beeney (argued), Marvin Schwartz and Karen A. Popp, of Sullivan & Cromwell, New York City, on behalf of individual appellees.

Charles S. Crompton, Jr. (argued), Robert K. Payson, James F. Burnett, Peter M. Sieglaff and Arthur L. Dent, of Potter,

Anderson & Corroon, Wilmington, on behalf of nominal appellees.

Before CHRISTIE, C.J., HORSEY, MOORE, HOLLAND, JJ., and BALICK, Judge * (constituting the Court en banc).

HOLLAND, Justice:

The appellant, Richard Sternberg ("Sternberg"), brought a double derivative suit [1] against GenCorp Inc. ("GenCorp"), its wholly owned subsidiary, RKO General, Inc. ("RKO General"), and certain past and present officers and directors of both corporations. GenCorp is an Ohio corporation qualified to do business in Delaware under 8 *Del.C.* § 371. RKO General is a Delaware corporation. The Court of Chancery found "that the complaint does not allege a constitutionally permissible basis for the assertion of personal jurisdiction over either Gencorp or those individual defendants who are not directors of RKO General." *Sternberg v. O'Neil,* Del. Ch., 532 A.2d 993, 994 (1987). The Court of Chancery also found that GenCorp was an indispensable party. *Id.* It, therefore, held that "the complaint must be dismissed as to all defendants." *Id.*

On appeal, we conclude on two bases, that the Court of Chancery erred, as a matter of law, when it determined that it lacked personal jurisdiction over GenCorp. First, when GenCorp registered to do business in Delaware and appointed an agent in Delaware to receive service of process, it consented to the general jurisdiction of Delaware courts. Second, we hold alternatively, that GenCorp's ownership of a Delaware corporation, whose alleged mismanagement is the subject of the double derivative suit, constitutes a "minimum contact" with Delaware which satisfies due process and enables Delaware courts to exercise specific personal jurisdiction over GenCorp in this matter. Therefore, we reverse the

---

* Sitting by designation pursuant to Del. Const. art. IV, § 12.

1. A "double derivative" action is a derivative action maintained by the shareholders of a parent corporation or holding company on behalf of a subsidiary company. *See* 13 *W. Fletcher,*

*Cyclopedia of the Law of Private Corporations* § 5977 (rev. perm. ed. Supp.1988). The wrongs addressed include wrongs directly incurred by the parent corporation as well as those indirectly incurred, because of wrongs suffered by the subsidiary company. *Id.*

Court of Chancery's decision to dismiss the complaint as to GenCorp. However, we affirm the dismissal of the complaint as to the individual nonresident defendants, who are not directors of RKO General.

## FACTS

GenCorp, an Ohio corporation, has its principal place of business in Akron, Ohio, and was known as The General Tire & Rubber Company until 1984 when it changed its name. GenCorp is qualified to conduct business in Delaware as a foreign corporation. RKO General, a Delaware corporation, has its principal place of business in New York, New York. All of RKO General's common stock has been owned by GenCorp since it was acquired in 1955. Sternberg is a shareholder of GenCorp.

Sternberg's complaint in the Court of Chancery alleged, *inter alia*, that the directors and officers of RKO General and GenCorp breached their fiduciary duties to the GenCorp shareholders when they made numerous false and misleading statements and omissions to the Federal Communications Commission ("FCC") about an investigation of GenCorp by the Securities and Exchange Commission ("SEC").[2] During broadcast license renewal proceedings before the FCC, RKO General apparently first failed to disclose the SEC investigation and then denied reports about it in a competitor's FCC filing. *RKO Gen., Inc. v. Federal Communications Comm'n*, 670 F.2d 215, 228 (D.C.Cir.1981), *cert. denied*, 456 U.S. 927, 102 S.Ct. 1974, 72 L.Ed.2d 442 (1982). As a result of this omission, the FCC denied the application for the renewal of the license for WNAC–TV, a television station in Boston, Massachusetts, that was owned by RKO General. *Id.* at 238. The denial of the application to renew the license for WNAC–TV was affirmed on appeal. *Id.*

In 1980, following the FCC's denial of RKO General's renewal application for WNAC–TV, several derivative suits were filed on behalf of GenCorp and RKO Gen-

eral. These derivative suits were brought to recover damages for the losses caused by the nonrenewal of the WNAC–TV license. These suits were subsequently joined with previously pending derivative lawsuits against GenCorp, its officers and directors. All of the cases were settled with the approval of the United States District Court for the Northern District of Ohio. Two shareholders objected to the settlement and appealed. The United States Court of Appeals for the Sixth Circuit upheld the settlement. *In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1087 (6th Cir.), *cert. denied*, 469 U.S. 858, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984). However, the Sixth Circuit noted that it did not "understand the settlement to bar all future shareholders' claims arising out of the very serious additional F.C.C. and I.R.S. proceedings against General Tire." *Id.* at 1085 n. 7.

In his complaint filed with the Court of Chancery in this case, Sternberg seeks equitable relief and damages, in excess of $298 million, "which have accrued since the settlement of previous derivative suits brought on behalf of GenCorp and RKO General." According to Sternberg's complaint, the FCC currently has before it a consolidated renewal proceeding which involves fourteen of the fifteen television and radio stations still operated by RKO General. Sternberg alleges that RKO General's lack of candor in the WNAC–TV proceeding creates a strong probability that these licenses will not be renewed. Sternberg further contends that this past lack of candor "creates a strong probability of preventing RKO General from selling its stations for their full value or at all, since it is the policy of the FCC to prohibit transfer of a license until a transferor like RKO General, whose license qualifications are at issue, has first been found to be qualified to hold the license." Sternberg's double derivative claim is premised upon his allegation that the individual defendants, officers and directors of GenCorp and RKO General, failed to manage the affairs of

---

**2.** The SEC was investigating charges that GenCorp violated federal securities laws by failing to disclose foreign bribes, overseas fraud, and illegal political contributions in the United States, and by falsifying corporate financial records to conceal these acts.

GenCorp and RKO General in a "fair, careful and prudent manner" and that such failure constitutes a breach of their fiduciary duties.

## GENERAL JURISDICTION AND CONSENT

The first question that we must address is whether Delaware courts may assert general personal jurisdiction over a foreign corporation [3] upon the basis of that corporation's qualification to do business in Delaware and its appointment of an agent to receive service of process in Delaware pursuant to a registration statute. If we determine that such registration can constitute consent to the general jurisdiction of the Delaware courts, we must then analyze the constitutional validity of that consent.

■ Although parties may not waive subject matter jurisdiction, they may waive personal jurisdiction. *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703, 102 S.Ct. 2099, 2105, 72 L.Ed.2d 492 (1982). Therefore, consent has been recognized as a basis for the exercise of general personal jurisdiction. In fact, "[a] variety of legal arrangements have been taken to represent express or implied consent to the personal jursdiction of the Court." *Id.; Armstrong v. Pomerance*, Del.Supr., 423 A.2d 174, 176–79 (1980).[4]

### Express Statutory Consent

Express consent has been found to be a basis for jurisdiction when a foreign corporation appoints an agent for service of process.[5] *See Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 170–71, 60 S.Ct. 153, 156, 84 L.Ed. 167 (1939); *Pennsylvania Fire Ins. Co. v. Gold Issue Mining & Milling Co.*, 243 U.S. 93, 95, 37 S.Ct.

344, 344, 61 L.Ed. 610 (1917). In *Pennsylvania Fire Ins. Co.*, the United States Supreme Court ruled that a foreign corporation, which authorizes an agent to receive service of process in compliance with the requirements of a state registration statute, has consented to the exercise of general personal jurisdiction in that state. *Id.* The unanimous opinion, written by Justice Holmes, held that Missouri could constitutionally exercise general jurisdiction over the defendant foreign corporation, and "not deprive the defendant of due process", even though its only apparent contact with Missouri was its designation of the Missouri Superintendent of Insurance as its registered agent. *Id.*[6]

### Implied Consent

Implied consent has also been found to be a basis for jurisdiction over a foreign corporation. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In fact, the Supreme Court's decision in *International Shoe* has become a landmark case because it established the modern doctrine of *in personam* jurisdiction by implied consent for state courts over foreign corporations (and nonresident defendants) when it held that:

> due process requires only that in order to subject a defendant to a judgment *in personam*, if he not be present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

*Id.* at 316, 66 S.Ct. at 158 (emphasis added). As a result of *International Shoe*, "long arm" statutes have been passed in every state. *See* Lilly, *Jurisdiction over Domes-*

---

3. A "foreign" corporation is one that is organized under the laws of another state.

4. A party may submit to a given court's jurisdiction by contractual consent. *National Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964). Parties may stipulate to personal jurisdiction. *Petrowski v. Hawkeye–Security Insurance Co.*, 350 U.S. 495, 76 S.Ct. 490, 100 L.Ed. 639 (1956).

5. Currently, all fifty states and the District of Columbia require the appointment of a local agent as a condition for transacting certain kinds of business within their boundaries. *See* R. Casad, *Jurisdiction in Civil Actions* § 3.02[2][a] (1983).

6. *See* von Mehren & Trautman, *Adjudicatory Jurisdiction: General Theories Compared and Evaluated*, 63 B.U.L.Rev. 279, 283–84 (1983).

*tic and Alien Defendants,* 69 Va.L.Rev. 85, 89 (1983). These statutes are legislative enactments describing those contacts between the forum and the defendant by which the nonresident defendant has implicitly consented to the exercise of personal jurisdiction by the courts of the forum state. *Id.*[7]

*Questions Raised by International Shoe*

It would appear that the due process holdings of *Pennsylvania Fire Ins. Co.* (express consent by registration) and *International Shoe* (implied consent by minimum contact) complement one another and are neither inconsistent nor mutually exclusive. However, many legal scholars are of the view that the "due process" basis for the *Pennsylvania Fire Ins. Co.* decision (statutory consent in the absence of any other contact) would no longer be viable under the "due process" standards of *International Shoe* and its progeny (requiring minimum contacts). *See e.g.,* Walker, *Foreign Corporation Laws: A Current Account,* 47 N.C.L.Rev. 733, 734–38 (1969); Brilmayer, Haverkamp, Logan, Lynch, Neuwirth & O'Brien, *A General Look at General Jurisdiction,* 66 Tex.L.Rev. 721, 758–59 (1988). The United States Supreme Court has not *directly* examined its holding in *Pennsylvania Fire Ins. Co.,* since its decision in *International Shoe.* The state and federal courts that have examined the due process basis for the holding in *Pennsylvania Fire Ins. Co.* in light of *International Shoe* are divided as to whether statutory registration can operate as an express consent to personal jurisdiction in the absence of "minimum contacts."[8] Thus, according to one scholar "the law regarding out-of-state claims against a foreign corporation is in disarray." Hill, *Choice of Law and Jurisdiction in the Supreme Court,* 81 Colum.L.Rev. 960, 982 (1981).

The debate about the continued viability of the holding in *Pennsylvania Fire Ins. Co.* after *International Shoe* is now before this Court. Sternberg argues that GenCorp., by qualifying to do business in Delaware as a foreign corporation, and by appointing an agent for service of process, has expressly consented to the general jurisdiction of the Delaware courts. GenCorp argues that, independent of its compliance with the Delaware qualification statute, the extent of its consent, if any, to the jurisdiction of Delaware's courts, must be exam-

**7.** Long arm statutes have been upheld as constitutional if they make adequate provision for notice to the absent defendant and if they comply with the *International Shoe* standard of "minimum contacts." Lilly, *Jurisdiction over Domestic and Alien Defendants,* 69 Va.L.Rev. 85, 89 (1983).

**8.** Some courts have approved the rationale of the earlier Supreme Court cases, *e.g., Holloway v. Wright & Morrissey, Inc.,* 739 F.2d 695 (1st Cir.1984); *Vogel v. Tenneco Oil Co.,* 276 F.Supp. 1008, 1012 (D.D.C.1967); *Goldman v. Pre–Fab Transit Co.,* 520 S.W.2d 597 (Tex.Ct.App.1975); *Dombroff v. Eagle–Picher Indus.,* 450 So.2d 923 (Fla.Dist.Ct.App.), *petition for review denied,* 458 So.2d 272 (1984); *Anderson v. United States,* 220 F.Supp. 769 (E.D.Pa.1963); *Cowan v. Ford Motor Co.,* 694 F.2d 104, 105 (5th Cir.1982), *question certified on reh'g,* 713 F.2d 100 (5th Cir. 1983), *Dist.Ct. rev'd & action remanded,* 719 F.2d 785 (5th Cir.1983). For a discussion of *Cowan,* see *Constitutional Law–Due Process—In Personam Jurisdiction Over a Nonresident Corporation in a Suit by a Nonresident Plaintiff on a Foreign Cause of Action is Not Violative of Due Process If Defendant is Amenable to Process Within the State,* 53 Miss.L.J. 369 (1983) (authored by Patrick McMurtray). *See also Amal-*gamet, Inc. v. Ledoux & Co.,* 645 F.Supp. 248, 249 (S.D.N.Y.1986) (New York law); *Kyle v. Days Inn of America, Inc.,* 550 F.Supp. 368, 369 (M.D.Pa.1982); *Fischman v. Fischman,* 470 F.Supp. 980, 982 (E.D.Pa.1979); *Augsbury Corp. v. Petrokey Corp.,* 97 A.D.2d 173, 470 N.Y.S.2d 787, 789 (1983); *Mittelstadt v. Rouzer,* 213 Neb. 178, 328 N.W.2d 467, 469–70 (1982); *Swift & Co. v. Lawson,* 95 Ga.App. 35, 97 S.E.2d 168, 174 (1957). *Cf. Price v. Wheeling Dollar Savings & Trust Co.,* 9 Ohio App.3d 315, 460 N.E.2d 264 (1983). Other courts have rejected the idea that registration alone is sufficient to establish jurisdiction. *E.g., Ratliff v. Cooper Laboratories,* 444 F.2d 745, 748 (4th Cir.), *cert. denied,* 404 U.S. 948, 92 S.Ct. 271, 30 L.Ed.2d 265, *reh'g denied,* 404 U.S. 1006, 92 S.Ct. 561, 30 L.Ed.2d 559 (1971); *In re Mid-Atlantic Toyota Antitrust Litig.,* 525 F.Supp. 1265, 1277–78 (D.Md.1981), *aff'd,* 704 F.2d 125 (4th Cir.1983); *Energy Reserves Group, Inc. v. Superior Oil Co.,* 460 F.Supp. 483, 504 (D.Kan.1978); *Schreiber v. Allis–Chalmers Corp.,* 448 F.Supp. 1079, 1091 (D.Kan.1978), *rev'd on other grounds,* 611 F.2d 790 (10th Cir.1979); *Springle v. Cottrell Eng'g Corp.,* 40 Md.App. 267, 391 A.2d 456, 469 (1978).

ined in light of the *International Shoe* due process "minimum contact" requirements.

The Court of Chancery based its dismissal of Sternberg's complaint upon Gen-Corp's interpretation of *International Shoe*. *Sternberg v. O'Neil*, 532 A.2d at 997. The Court of Chancery "noted that personal jurisdiction is an individual right which, like other individual rights, may be waived." *Id.* at 996 (citing *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704–05, 102 S.Ct. 2099, 2105, 72 L.Ed.2d 492 (1982)). However, the Court of Chancery rejected Sternberg's contention that GenCorp's qualification as a foreign corporation constituted an express consent to the general jurisdiction of the Delaware courts. The Court of Chancery held that all assertions of state court jurisdiction—including statutory consent—must be evaluated according to the standards enunciated in *International Shoe*. *Sternberg v. O'Neil*, 532 A.2d at 995–96. We disagree.

### Express Statutory Consent to Jurisdiction and Due Process

■ We are of the opinion that express consent is a valid basis for the exercise of general jurisdiction in the absence of any other basis for the exercise of jurisdiction, i.e. "minimum contacts". In particular, we are of the view that after *International Shoe*, a state still has power to exercise general judicial jurisdiction over a foreign corporation which has expressly consented to the exercise of such jurisdiction. *Pennsylvania Fire Ins. Co. v. Gold Issue Mining & Milling Co.*, 243 U.S. at 95, 37 S.Ct. at 344. *See also Restatement (Second) of Conflict of Laws*, §§ 43, 44 (1971). We find support for the continued recognition of express consent, through statutory registration, as a basis for general personal jurisdiction over foreign corporations, in several cases that have been decided by the United States Supreme Court after *International Shoe*.

Not long after its decision in *International Shoe*, the United States Supreme Court upheld the constitutional validity of an exercise of *in personam* general jurisdiction with respect to a claim unrelated to the foreign corporation defendant's forum activity. *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485, *reh'g denied*, 343 U.S. 917, 72 S.Ct. 645, 96 L.Ed. 1332 (1952).[9] The Court of Chancery relied upon a portion of the *Perkins* decision which stated:

> The corporate activities of a foreign corporation which, under state statute, make it necessary for it to secure a license and to designate a statutory agent upon whom process may be served provide a helpful but not a conclusive test.

*Sternberg v. O'Neil*, 532 A.2d at 996 (quoting *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. at 445, 72 S.Ct. at 418). The context of this quoted language was a search for "minimum contacts" which would support the legal fiction of implied consent to jurisdiction. It was necessary for the *Perkins* Court to conduct a minimum contact analysis before it could find an *implied consent* to the general jurisdiction of Ohio because *the foreign corporation was not qualified* in Ohio and *had not appointed an agent* for service of process. Nevertheless, *Perkins* reaffirmed the principle that there would have been no need to search for minimum contacts to support an implied consent to jurisdiction, if express consent had been given:

> Today if an authorized representative of a foreign corporation be physically present in the state of the forum and be there engaged in activities appropriate to accepting service and receiving notice on its behalf, we recognize that there is no unfairness in subjecting that corporation to the jurisdiction of the courts of that

---

**9.** We are aware that some legal scholars have argued that the *Perkins* case should be regarded as a decision based only upon its exceptional facts. *See* von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv.L. Rev. 1121, 1144 (1966). However, those concerns are directed to the finding of implied consent to general jurisdiction by an unregistered foreign corporation rather than to the issue of express consent to general jurisdiction through registration.

state through such service of process upon that representative.

*Perkins v. Benguet Consol. Mining Co.,* 342 U.S. at 444, 72 S.Ct. at 417.[10]

The United States Supreme Court continued to acknowledge that the due process considerations are different when state court jurisdiction is based on implied consent and when such jurisdiction is based on express consent in *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). When jurisdiction is based on implied consent, "[t]he Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Id.* at 471–72, 105 S.Ct. at 2181 (citing *International Shoe Co. v. Washington,* 326 U.S. at 319, 66 S.Ct. at 159). However, immediately after stating this general proposition in *Burger King Corp.,* the Court reiterated its long-standing position that the personal jurisdiction requirement is a waivable right. *Burger King Corp. v. Rudzewicz,* 471 U.S. at 472 n. 14, 105 S.Ct. at 2182 n. 14.[11] Therefore, the Court held that "[w]here a forum seeks to assert specific jurisdiction over an out-of-state defendant *who has not consented* to suit there," due process is satisfied if the defendant has minimum contacts with the forum. *Id.* at 472, 105 S.Ct. at 2182 (emphasis added). Thus, in *Burger King Corp.,* as in *Perkins,* the Supreme Court found that in the absence of express consent, due process requires minimum contacts for a finding of implied consent to a forum's jurisdiction. *Id.* Conversely, due process is satisfied by express consent, since express consent constitutes a waiver of all other personal jurisdiction requirements. *See id.*

## Statutory Consent Remains a Valid Basis for Jurisdiction

We also find continuing support for the recognition of statutory consent as a basis for general jurisdiction in the Supreme Court's very recent decision in *Bendix Autolite Corp. v. Midwesco Enterprises,* —— U.S. ——, 108 S.Ct. 2218, 100 L.Ed.2d 896 (1988). The issue in *Bendix Autolite Corp.,* as in *Perkins,* involved an unregistered foreign corporation and an attempted assertion of jurisdiction over the foreign corporation by the state of Ohio. In *Bendix Autolite Corp.,* the Court appeared to accept the rationale, explicitly stated in the Ohio statute, that the appointment of an agent for service of process would operate as a consent to general jurisdiction in any cause of action, "including those in which it did not have minimum contacts necessary for supporting personal jurisdiction," without offending the requirements of due process. *Id.* 108 S.Ct. at 2221. In a preamble to its ultimate holding, the Court stated:

> [D]esignation of an agent subjects the foreign corporation to the general jurisdiction of the Ohio courts in matters to which Ohio's tenuous relation would not otherwise extend. *Cf. World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286 [100 S.Ct. 559, 62 L.Ed.2d 490] (1980). The Ohio statutory scheme thus forces a corporation to choose between exposure to the general jurisdiction of Ohio courts or forfeiture of the limitations defense, remaining subject to suit in Ohio and perpetuity. Requiring a foreign corporation to appoint an agent for service in all cases and to defend itself with reference to all transactions, including those in which it did not have the minimum contacts necessary for support-

---

10. *Perkins* also held that federal due process neither forbids nor compels a state from opening its courts to a proceeding against a foreign corporation doing business within the state even though the cause of action does not arise from events occurring within that state. 342 U.S. at 446, 72 S.Ct. at 418.

11. The *Burger King* Court also noted that "[a]lthough this protection operates to restrict

state power, it 'must be seen as ultimately a function of the individual liberty interest preserved by the Due Process Clause' rather than as a function 'of federalism concerns.'" 471 U.S. at 472 n. 13, 105 S.Ct. at 2182 n. 13 (citing *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702–03, n. 10, 102 S.Ct. 2099, 2104–05 n. 10, 72 L.Ed.2d 492 (1982)).

ing personal jurisdiction, is a significant burden. *Id.*

▪ In our opinion, the holdings of the United States Supreme Court which involved foreign corporations, following *International Shoe,* are entirely consistent with the continued viability of its earlier holding in *Pennsylvania Fire Ins. Co..* If a foreign corporation has not expressly consented to a state's jurisdiction by registration, "minimum contacts" with that state can provide a due process basis for finding an implied consent to the state's jurisdiction. *International Shoe Co. v. Washington,* 326 U.S. at 316–18, 66 S.Ct. at 158–59; *Burger King Corp. v. Rudzewicz,* 471 U.S. at 474–76, 105 S.Ct. at 2183–84; *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. at 446, 72 S.Ct. at 418. If a foreign corporation has expressly consented to the jurisdiction of a state by registration, due process is satisfied and an examination of "minimum contacts" to find implied consent is unnecessary. *Pennsylvania Fire Ins. Co. v. Gold Issue Mining & Milling Co.,* 243 U.S. at 95, 37 S.Ct. at 344; *See Bendix Autolite Corp. v. Midwesco Enterprises,* 108 S.Ct. at 2221; *Burger King Corp. v. Rudzewicz,* 471 U.S. at 472, 105 S.Ct. at 2182. *Cf. Perkins v. Benguet Consol. Mining Co.,* 342 U.S. at 445–46, 72 S.Ct. at 418. However, these due process conclusions do not mean that foreign corporations are without any federal constitutional protection from the registration requirements of fifty different states and the District of Columbia.

### Statutory Consent to Jurisdiction and the Commerce Clause

▪ In *Bendix Autolite Corp.,* the Court held that "[s]tate interests that are

legitimate for equal protection or due process purposes may be insufficient to withstand Commerce Clause scrutiny." 108 S.Ct. at 2222.[12] Therefore, in the present case, although GenCorp's consent to the general personal jurisdiction of Delaware courts by qualifying as a foreign corporation satisfies due process, we must also determine if the Delaware statute places an unreasonable burden on interstate commerce. *Id.*

In *Bendix Autolite Corp.,* the Court was called upon to review an Ohio registration statute which tolled the statute of limitations for any period of time that the foreign corporation was not "present" in the state. To be present in Ohio, a foreign corporation had to appoint an agent for service of process which, by statute, made the corporation subject to the general jurisdiction of the Ohio courts. *Id.* at 2221 n. 2. Thus, the Ohio tolling statute forced a foreign corporation to choose between exposure to the general jurisdiction of the Ohio courts, if it appointed an agent to receive process, and forfeiture of the statute of limitations defense if it did not make the appointment. *Id.* at 2221. The Court concluded that the tolling provision placed an undue burden on interstate commerce and thus violated the Commerce Clause. *Id.* at 2222. Specifically, the Court found that the burdens imposed on interstate commerce by Ohio's coercive statutory scheme were not outweighed by Ohio's interest in protecting its citizens from out-of-state corporations. *Id.*

▪ It is clear after *Bendix Autolite Corp.* that any statute which causes a foreign corporation to register and thereby consent to the general jurisdiction of a

---

**12.** Prior to its decision in *Bendix Autolite Corp.,* the Court held that for equal protection purposes, a state may rationally make adjustments for the difference between serving domestic corporations and nonregistered foreign corporations. *G.D. Searle & Co. v. Cohn,* 455 U.S. 404, 412, 102 S.Ct. 1137, 1144, 71 L.Ed.2d 250 (1982). It is interesting to note that in *G.D. Searle,* the foreign corporation assumed that registration would be a consent to general jurisdiction in the absence of minimum contacts. *Id.* at 412 n. 7, 102 S.Ct. at 1147 n. 7. The "due process" argu-

ment which was made was based on the coercive nature of the registration statute. *Id. Cf.* Kurland, *The Supreme Court, the Due Process Clause, and the In Personam Jurisdiction of State Courts,* 25 U.Chi.L.Rev. 569, 580 (1958). That "due process" challenge was modified and eventually evolved into a successful Commerce Clause argument in *Coons v. American Honda Motor Co.,* 94 N.J. 307, 463 A.2d 921, 926–27 (1983), *cert. denied,* 469 U.S. 1123, 105 S.Ct. 808, 83 L.Ed.2d 800 (1985).

state, or in the absence of that registration and consent, to be subjected to regulations that are inconsistent with those for domestic corporations, is a burden that violates the federal commerce clause.[13] *Id.* However, the Delaware statutory scheme contains no coercive penalties or inconsistent regulations for foreign corporations that chose not to register. The penalty for failure to qualify as a foreign corporation in Delaware is set forth in 8 *Del.C.* § 383(a), which provides:

> (a) A foreign corporation which is required to comply with [sections] 371 and 372 of this title and which has done business in this State without authority shall not maintain any action or special proceeding in this State unless and until such corporation has been authorized to do business in this State and has paid to the State all fees, penalties and franchise taxes for the years or parts thereof during which it did business in this State without authority. This prohibition shall not apply to any successor in interest of such foreign corporation.

Thus, a nonqualified foreign corporation which should have complied with Section 371 is simply prevented from maintaining any action in Delaware *until* it has complied. *Farmers Bank v. Sinwellan Corp.,* Del.Supr., 367 A.2d 180, 182 (1976). More importantly, the same statute provides that the failure of a foreign corporation to obtain authority to do business in Delaware shall not impair the validity of any act or contract and shall not prevent the foreign corporation from defending an action in Delaware. *See also Model Heating Co. v.*

*Magarity,* Del.Supr., 81 A. 394 (1911). 8 *Del.C.* § 383(b) states:

> (b) The failure of a foreign corporation to obtain authority to do business in this State shall not impair the validity of any contract or act of the foreign corporation or the right of any other party to the contract to maintain any action or special proceeding thereon, and shall not prevent the foreign corporation from defending any action or special proceeding in this State.

■ The right of an unregistered foreign corporation to defend an action in Delaware *and* to raise a statute of limitations defense deserves particular attention in view of *Bendix Autolite Corp.* In Delaware, the statute of limitations continues to run even with respect to foreign corporations that transact business in this State and have not qualified to do business under Section 371. This Court has specifically held that there is no tolling effect on the applicable statute of limitations in any action when the nonresident defendant in the suit is subject to substituted service of process. *Hurwitch v. Adams,* Del.Supr., 155 A.2d 591, 593 (1959). Substituted service of process on nonqualifying foreign corporations is provided for in 8 *Del.C.* § 382(a).[14] Therefore, a foreign corporation which transacts business in this State and does not qualify to do business under Section 371, still has an absolute right to raise the statute of limitations as a defense in any action. *Cf. Red Men's Fraternal Accident Ass'n of America v. Merritt,* Del. Super., 117 A. 284, 285 (1921). It is clear that, unlike Midwesco in *Bendix Autolite Corp.,* GenCorp faced no Hobson's choice

---

**13.** The New Jersey Supreme Court had previously declared its tolling statute unconstitutional under a Commerce Clause analysis. *Coons v. American Honda Motor Co.,* 94 N.J. 307, 463 A.2d 921 (1983), *cert. denied,* 469 U.S. 1123, 105 S.Ct. 808, 83 L.Ed.2d 800 (1985). In *Bendix Autolite Corp.,* the Court specifically mentioned its decision not to review that case. *Bendix Autolite Corp. v. Midwesco Enterprises,* 108 S.Ct. at 2222 n. 3.

**14.** 8 *Del.C.* § 382(a) provides:
(a) Any foreign corporation which shall transact business in this State without having qualified to do business under [section] 371 of

this title shall be deemed to have thereby appointed and constituted the Secretary of State of this State, its agent for the acceptance of legal process in any civil action, suit, or proceeding against it in any state or federal court in this State arising or growing out of any business transacted by it within this State. The transaction of business in this State by such corporation shall be a signification of the agreement of such corporation that any such process when so served shall be of the same legal force and validity as if served upon an authorized officer or agent personally within this State.

in the Delaware statutory scheme which caused it to decide to qualify as a foreign corporation. In fact, GenCorp did not argue that it had been coerced into qualifying as a foreign corporation, even though, following the oral argument in this case, the parties were directed to address the implications for this appeal of the decision of *Bendix Autolite Corp.*.

### Scope of GenCorp's Express Statutory Consent

GenCorp qualified as a foreign corporation in Delaware pursuant to 8 *Del.C.* § 371(b).[15] Service of process upon a foreign corporation which has qualified under Section 371 is made upon its registered agent.[16] 8 *Del.C* § 376(a).[17] In its final legal memorandum, although GenCorp did not argue that Sections 371 and 376 were coercive, it did contend that those sections "simply provided a method for service of process, giving fair notice to a foreign corporation that an action had been filed against it, but reserving unto that foreign corporation all rights to contest jurisdiction on due process grounds." GenCorp was also under the impression that Section 371 and 376 had never been construed to operate as consent to the general jurisdiction of Delaware courts.

However, we have found that similar arguments were rejected by the United States District Court for the District of Delaware more than a decade ago, in *D'Angelo v. Petroleos Mexicanas*, 378 F.Supp. 1034 (D.Del.1974), when it had occasion to address the scope of Section 376:

> Section 376 does not in [its] terms limit the amenability of service of a qualified corporation to one which does business in Delaware or with respect to a cause of action arising in Delaware. By the generality of its terms, a foreign corporation qualified in Delaware is subject to service of process in Delaware on any transitory cause of action.

*Id.* at 1039. The District Court held that by qualifying as a foreign corporation, the Mobil Oil Corporation could be *served* and *sued* in Delaware on a transitory cause of action. *Id.*

The Delaware statutory scheme with respect to foreign corporations is consistent with the distinction we have found between a state court's power to exercise general jurisdiction over a corporation based upon express consent and its ability to exercise jurisdiction over a foreign corporation as a result of implied consent. The codification of this distinction is apparent when Section 376, which applies to qualified foreign corporations, is compared with Section 382 of Title Eight of the Delaware Code, which is applicable to non-qualified foreign corporations. Section 382 is a "long arm" statute which provides for service upon a non-qual-

15. 8 *Del.C.* § 371(b) reads as follows:

> (b) No foreign corporation shall do any business in this State, through or by branch offices, agents or representatives located in this State, until it shall have paid to the Secretary of State of this State for the use of this State, $50, and shall have filed in the office of the Secretary of State:
>
> (1) A certificate issued by an authorized officer of the jurisdiction of its incorporation evidencing its corporate existence. If such certificate is in a foreign language, a translation thereof, under oath of the translator, shall be attached thereto.
>
> (2) A statement executed by an authorized officer of each corporation setting forth (i) the name and address of its registered agent in this State, which agent shall be either an individual resident in this State when appointed or another corporation authorized to transact business in this State, (ii) a statement, as of a date not earlier than [six] months prior to the filing date, of the assets and liabilities of

the corporation, and (iii) the business it proposes to do in this State and a statement that it is authorized to do that business in the jurisdiction of its incorporation. The statement shall be acknowledged in accordance with [section] 103 of this title.

16. GenCorp has appointed Corporation Trust Company as its agent in Delaware upon whom service of process upon GenCorp may be made.

17. 8 *Del.C.* § 376(a) reads as follows:

> (a) All process issued out of any court of this State, all orders made by any court of this State, all rules and notices of any kind required to be served on any foreign corporation which has qualified to do business in this State may be served on the registered agent of the corporation designated in accordance with [section] 371 of this title, or, if there be no such agent, then on any officer, director or other agent of the corporation then in this State.

ified foreign corporation which has implicitly consented to Delaware's jurisdiction by transacting business in Delaware. That implied consent is limited, by statute, to those proceedings against the non-qualified foreign corporation which arose or grew out of business transacted in Delaware. *D'Angelo v. Petroleos Mexicanas,* 378 F.Supp. at 1039.[18]

■ Express consent to jurisdiction by a foreign corporation takes the form of an appointment of a statutory agent to receive service of process in compliance with the statutory requirements of the state in which the corporation desires to do business. *Neirbo Co. v. Bethlehem Shipbuilding Corp.,* 308 U.S. 165, 170–71, 174–75, 60 S.Ct. 153, 156, 158, 84 L.Ed. 167 (1939); *Pennsylvania Fire Ins. Co. v. Gold Issue Mining & Milling Co.,* 243 U.S. 93, 95, 37 S.Ct. 344, 344, 61 L.Ed. 610 (1917); *Restatement (Second) of Conflict of Laws,* § 44 (1971). A corporation that authorizes an agent to receive service of process in compliance with the requirements of a state statute, consents to the exercise of personal jurisdiction in any action that is within the scope of the agent's authority. *Id.* There are no limitations under 8 *Del.C.* § 376.

We agree with the Delaware District Court's interpretation in *D'Angelo* of the effect of registration as a foreign corporation in Delaware. We find that when GenCorp qualified as a foreign corporation, pursuant to 8 *Del.C.* § 371, and appointed a registered agent for the service of process, pursuant to 8 *Del.C.* § 376, GenCorp consented to the exercise of general jurisdiction by the Courts of Delaware.[19]

### IMPLIED CONSENT TO SPECIFIC JURISDICTION

According to our analysis of the due process precedents, a search for minimum contacts is only required to support an assertion of jurisdiction based upon the legal fiction of implied consent. An express consent to jurisdiction, in and of itself, satisfies the requirements of due process. However, we are mindful that the United States Supreme Court has stated that "all assertions of state court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny." *Shaffer v. Heitner,* 433 U.S. 186, 212, 97 S.Ct. 2569, 2584, 53 L.Ed.2d 683 (1977). The Court of Chancery construed that language in the *Shaffer* decision as requiring the application of a minimum contact analysis, even when a foreign corporation has registered to do business. *Sternberg v. O'Neil,* Del.Ch., 532 A.2d 993, 996 (1987).

However, we find when that statement from *Shaffer* is read in context, it stands for the proposition that *all assertions* of state court jurisdiction *based upon legal fictions* must be evaluated according to the standards set forth in *International Shoe.*[20] In *International Shoe,* the legal fiction was implied consent to jurisdiction. In *Shaffer,* the legal fiction was that *in rem* actions are proceedings against property rather than people. The Court rejected that legal fiction and concluded "[t]he fiction that an assertion of jurisdiction over property is anything but an assertion of jurisdiction over the owner of the property supports an ancient form without substantial modern justification. Its continued acceptance would serve only to allow state-court jurisdiction that is fundamentally unfair to the defendant." *Shaffer v. Heitner,* 433 U.S. at 212, 97 S.Ct. at 2584. Therefore, *Shaffer* extended the due process minimum contact jurisdictional requirement set forth in *International Shoe* to *in rem* actions.

---

**18.** *See also Fehl v. S.W.C. Corp.,* 433 F.Supp. 939, 944 (D.Del.1977), *reargument denied,* 449 F.Supp. 48 (1978); *Cropper v. Rego Distribution Center, Inc.,* 461 F.Supp. 529, 532 (D.Del.1978). *Cf. Klein v. Sunbeam Corp.,* Del.Supr., 95 A.2d 460 (1953) (interpreting a prior statute).

**19.** "[W]hen a power actually is conferred by a document, the party executing it takes the risk of the interpretation that may be put upon it by

the courts." *Pennsylvania Fire Ins. Co. v. Gold Issue Mining & Milling Co.,* 243 U.S. at 96, 37 S.Ct. at 344.

**20.** That statement from *Shaffer* has been relied upon by this Court to require a minimum contact analysis of implied consent to jurisdiction by nonresident directors of Delaware corporations. *Armstrong v. Pomerance,* Del.Supr., 423 A.2d 174, 176 (1980).

A reading of *Shaffer*, in the context of legal fictions, is consistent with the court's later statement that "where a forum seeks to assert specific jurisdiction over an out-of-state defendant, *who has not consented* to suit there," due process is satisfied if the defendant has minimum contacts with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182 (1985) (emphasis added). However, despite our conclusion that a minimum contact analysis is not required,[21] in view of the broad language in *Shaffer*, we will examine Sternberg's claim according to the standards enunciated in *International Shoe*.

### General and Specific Jurisdiction Distinguished

We have distinguished between an express and an implied consent to the jurisdiction of a forum. The United States Supreme Court and legal scholars have also gone to great length to distinguish between the concepts of general jurisdiction and specific jurisdiction.[22] The concept of dividing jurisdiction into two categories described, as "general" and "specific," was apparently first introduced by Professors Arthur von Mehren and Donald Trautman. *See* A. von Mehren & D. Trautman, *The Law of Multistate Problems* 654 (1965); von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv.L.Rev. 1121, 1136 (1966). According to their jurisdictional model, "[i]f a court asserted jurisdiction based on the affiliations between the forum and one of the parties without regard to the nature of the dispute, it was exercising general jurisdiction. If, on the other hand, a court asserted jurisdiction based on affiliations between the forum and the controversy, ... it was exercising specific jurisdiction." Twitchell, *The Myth of General Jurisdiction*, 101 Harv.L.Rev. 610, 611 (1988).[23]

The United States Supreme Court has subsequently given recognition to this general/specific jurisdictional dichotomy. *See Burger King Corp. v. Rudzewicz*, 471 U.S. at 473 n. 15, 105 S.Ct., at 2182 n. 15; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8–9, 104 S.Ct. 1868, 1872 nn. 8–9 (1984); *Calder v. Jones*, 465 U.S. 783, 788, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984). Nevertheless, the legal scholars continue to debate the problems generated by the use and application of these terms. *See* Brilmayer, *Related Contacts and Personal Jurisdiction*, 101 Harv.L.Rev. 1444 (1988); Twitchell, *A Rejoinder to Professor Brilmayer*, 101 Harv.L.Rev. 1465 (1988).

In the first portion of this opinion, we concluded that GenCorp has expressly consented to the general jurisdiction of the State of Delaware. However, for the purpose of discerning any implied consent to Delaware's jurisdiction, we will limit our inquiry to GenCorp's implicit consent to specific jurisdiction in the double derivative action brought by Sternberg. The question which we will address is whether a foreign corporation's ownership of a Delaware corporate subsidiary, constitutes a due process

---

**21.** Justices Stevens, White and Blackmun have also observed that "[a]n examination of minimum contacts is not always necessary to determine whether a state court's assertion of personal jurisdiction is constitutional." *Asahi Metal Indus. v. Super. Ct. of Cal., Solano County*, 480 U.S. 102, 121, 107 S.Ct. 1026, 1038, 94 L.Ed.2d 92 (1987) (Justice Stevens, with whom Justice White and Justice Blackmun join concurring in part and concurring in the judgment) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. at 476–78, 105 S.Ct. at 2184–85).

**22.** *See* Brilmayer, *How Contacts Count: Due Process Limitations on State Court Jurisdiction*, 1980 Sup.Ct.Rev. 77; Lewis, *A Brave New World for Personal Jurisdiction: Flexible Tests Under Uniform Standards*, 37 Vand.L.Rev. 1 (1984); Richman, *Review Essay, Part I—Casad's Juris-*

*diction in Civil Actions; Part II—A Sliding Scale to Supplement the Distinction Between General and Specific Jurisdiction*, 72 Calif.L.Rev. 1328 (1984); Stein, *Styles of Argument and Interstate Federalism in the Law of Personal Jurisdiction*, 65 Tex.L.Rev. 689 (1987); Hill, *Choice of Law and Jurisdiction in the Supreme Court*, 81 Colum.L.Rev. 960 (1981); Brilmayer, Haverkamp, Logan, Lynch, Neuwirth & O'Brien, *A General Look at General Jurisdiction* 66 Tex.L.Rev. 721 (1988).

**23.** Professor Twitchell suggests that instead of using the terms specific and general when making a jurisdictional analysis, the terms "dispute-blind" and "dispute-specific" should be used. Twitchell, *The Myth of General Jurisdiction*, 101 Harv.L.Rev. 610, 613 (1988).

minimum contact which permits Delaware courts to assert specific jurisdiction over the foreign parent corporation in a double derivative action.

### The Defendant, the Forum and the Litigation

■ The *sine qua non* of any exercise of jurisdiction based upon implied consent is the *International Shoe* requirement for a defendant to have "certain minimum contacts with [the forum], such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In order to support an exercise of specific jurisdiction, the nonresident defendant's minimum contacts with the forum must give rise to the particular controversy. *Id.* at 317–18, 66 S.Ct. at 158–59.[24] Thus, whether the requisite minimum contacts exist is determined by examining the relationship between the defendant, the forum and the litigation. *Shaffer v. Heitner*, 433 U.S. at 204, 97 S.Ct. at 2579. Our analysis of GenCorp's implied consent to Delaware's specific jurisdiction in this case must focus, therefore, upon the relationship between GenCorp, Delaware, and Sternberg's lawsuit.

GenCorp is an Ohio corporation. For more than thirty years, GenCorp has owned 100% of the issued and outstanding shares of RKO General, a Delaware corporation. Sternberg's action is a double derivative suit. One aspect of the suit alleges mismanagement and breaches of fiduciary duty on the part of the directors of RKO General, the Delaware corporation, resulting in detriment to that corporation and therefore to GenCorp, the sole stockholder of that Delaware corporation. The other aspect of the Sternberg suit alleges mismanagement and breaches of fiduciary duty on the part of the GenCorp directors. Sternberg's complaint alleges that as a result of the breaches of fiduciary duty by the directors and officers of each of the corporations, RKO General has lost its radio and television broadcast licenses or the value thereof, to the detriment of both GenCorp and RKO General.

We must decide whether or not Delaware has specific jurisdiction to hear this controversy. The Court of Chancery concluded that GenCorp's ownership of a Delaware subsidiary was an insufficient contact with this State to establish a basis for personal jurisdiction. *Sternberg v. O'Neil*, 532 A.2d at 998. The Court of Chancery ruled that Delaware had no authority to exercise *in personam* jurisdiction over GenCorp and that since GenCorp was an indispensable party, the entire case must be dismissed. *Id.* at 999. On appeal, GenCorp argues that this conclusion was correct and is mandated by the holding in *Shaffer*.

### Shaffer v. Heitner

In *Shaffer*, the United States Supreme Court held that Delaware could not exercise jurisdiction in a stockholder derivative suit brought against nonresident corporate officers, whose only contact with the state was their ownership of a minority interest of stock in a Delaware corporation. *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). In *Shaffer*, the defendants argued that their ownership of stock in a Delaware corporation was insufficient to satisfy the requirements of *International Shoe*. *Id.* at 193, 97 S.Ct. at 2574. The United States Supreme Court held that the minimum contact test that had been used in *in personam* actions was also applicable to *in rem* assertions of jurisdiction. *Id.* at 207–12, 97 S.Ct. at 2581. The *Shaffer* majority applied that test and concluded that since the derivative claims being asserted were unrelated to the property that had been seized, an exercise of jurisdiction violated due process because it did not meet the minimum contact standard of *International Shoe*. *Id.*

---

**24.** Traditional notions of fair play are not offended by requiring a person to defend an action in a state where it purposefully availed itself of the privilege of conducting activities and thus, invoked the benefit and protection of the forum's laws. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). This reasoning was reaffirmed in *Burger King Corp. v. Rudzewicz*, 471 U.S. at 474–75, 105 S.Ct. at 2183.

Nevertheless, after reaching that conclusion, based upon specific facts that had been presented, the *Shaffer* Court acknowledged that "jurisdiction over many types of actions which now are or might be brought *in rem* would not be affected by a holding that any assertion of state-court jurisdiction must satisfy the *International Shoe* standard." *Id.* at 208, 97 S.Ct. at 2581.[25] The implications of *Shaffer* have been considered by legal scholars at length.[26] However, as one legal scholar has observed "whatever its nuances, the obvious impact of *Shaffer* is to limit jurisdiction where the property of a nonresident is seized in order to provide a basis for prosecuting an unrelated claim." Lilly, *Jurisdiction over Domestic and Alien Defendants* 69 Va.L. Rev. 85, 98 (1983).

### Shaffer Distinguished

One of the first *in rem* actions to come before this Court after *Shaffer* involved the attachment of a parent-foreign corporation's stock interest in a wholly owned Delaware subsidiary. *Papendick v. Bosch,* Del.Supr., 410 A.2d 148 (1979), *cert. denied,* 446 U.S. 909, 100 S.Ct. 1837, 64 L.Ed.2d 262 (1980). In *Papendick,* the litigation involved an alleged breach of contract. The parent foreign corporation had formed a Delaware subsidiary for the purpose of executing the contract which was in dispute. This Court found that a foreign corporation which had formed a Delaware subsidiary for the purpose of implementing a contract, had implicitly consented to the jurisdiction of the Delaware courts in an action brought against both corporations alleging a breach of that contract. *Id.* at 152. In *Papendick,* this Court followed the directive of *Shaffer* to focus upon the defendant, the forum, and the litigation. *Id.*[27]

In *Papendick,* after distinguishing the facts in *Shaffer,* this Court acknowledged its obligation to apply the *International Shoe* minimum contact standard, in accordance with the *Shaffer* holding. This Court was not only aware that the standards of *International Shoe* were to be applied, but that "[t]he requirements of *International Shoe* ... must be met as to each defendant over whom a state court exercises jurisdiction." *Rush v. Savchuk,* 444 U.S. 320, 332, 100 S.Ct. 571, 579, 62 L.Ed.2d 516 (1980). Jurisdiction over a wholly owned Delaware subsidiary does

---

**25.** "Such suits are permissible because of (1) the nonresident's claimed interest in the property at issue; (2) the conferral of benefits and protection by the forum state; and (3) the state's interest in the marketability of property located within its boundaries. These factors combine to satisfy the 'contacts' and 'fairness' elements of *International Shoe.*" Lilly, *Jurisdiction over Domestic and Alien Defendants* 69 Va.L.Rev. 85, 98 n. 57 (1983).

**26.** *See, e.g.,* Bernstine, *Shaffer v. Heitner: A Death Warrant for the Transient Rule of In Personam Jurisdiction?,* 25 Vill.L.Rev. 38, 47 n. 59 (1980); Casad, *Shaffer v. Heitner: An End to Ambivalence in Jurisdiction Theory?,* 26 U.Kan. L.Rev. 61, 77 (1977); Lacy, *Personal Jurisdiction and Service of Summons After Shaffer v. Heitner,* 57 Or.L.Rev. 505 (1978); Leathers, *The First Two Years after Shaffer v. Heitner,* 40 La.L.Rev. 907 (1980); Riesenfeld, *Shaffer v. Heitner: Holding, Implications, Forebodings,* 30 Hastings L.J. 1183 (1979); Farell, *Forward to the Symposium on Shaffer v. Heitner,* 45 Brooklyn L.Rev. 493 (1979); *Note, Attachment Jurisdiction After Shaffer v. Heitner,* 32 Stan.L.Rev. 167 (1979); *Comment, State Court Jurisdiction After Shaffer v. Heitner: The Lingering Problems,* 15 Willamette L.Rev. 281 (1979).

**27.** In deciding *Papendick,* we distinguished *Shaffer:*

> This is not, ... a case of "mere" ownership of stock having its situs in Delaware as was concluded in *Shaffer.* In *Shaffer,* the Court noted that with respect to the defendants in that case:
>
>> "[The] property is not the subject matter of this litigation, nor is the underlying cause of action related to the property ... Nor does [the appellee] identify any act related to his cause of action as having taken place in Delaware."
>
> 433 U.S. at 213, 97 S.Ct. at 2585, 53 L.Ed.2d at 703. Moreover, the Court concluded that it had not been demonstrated that the
>
>> "appellants [had] 'purposefully avail[ed themselves] of the privilege of conducting activities within the forum State' ... in a way that would justify bringing them before a Delaware tribunal. Appellants have simply nothing to do with the State of Delaware ... [A]ppellants had no reason to expect to be haled before a Delaware court."
>
> 433 U.S. at 216, 97 S.Ct. at 2586, 53 L.Ed.2d at 705 (citations omitted).

*Papendick v. Bosch,* 410 A.2d at 151.

not automatically establish jurisdiction over the parent corporation in *any* forum. *Cf. Cannon Mfg. Co. v. Cudahy Packing Co.,* 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925).[28] Therefore, both the parent and the subsidiary corporation's contacts with the forum state must be assessed individually. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 781 n. 13, 104 S.Ct. 1473, 1481–82 n. 13, 79 L.Ed.2d 790 (1984).[29]

The decision of the foreign parent corporation to maintain a direct and continuing connection between Delaware and itself, as the owner of a Delaware subsidiary, was found to be a "minimum contact" of paramount importance in the specific jurisdictional analysis of *Papendick:*

> We do not believe that the *International Shoe* "minimum contact" due process standards were intended to deprive Delaware courts of jurisdiction by permitting an alien corporation to come into this State to create a Delaware corporate subsidiary for the purpose of implementing a contract under the protection of and pursuant to powers granted by the laws of Delaware, and then be heard to say, in a suit arising from the very contract which the subsidiary was created to implement, that the only contact between it and Delaware is the "mere" ownership of stock of the subsidiary.
>
> The latter point is most significant in applying *International Shoe* standards. There is a controlling distinction, for present purposes, between the ownership of shares of stock acquired by purchase or grant as in *Shaffer,* on the one hand, and ownership arising from the purposeful utilization of the benefits and protec-

tions of the Delaware Corporation Law in activities related to the underlying cause of action, on the other hand. [The appellee] purposefully availed itself of the benefits and protections of the laws of the State of Delaware for financial gain in activities related to the cause of action [by forming a Delaware subsidiary]. Therein lies the "minimum contact" sufficient to sustain the jurisdiction of Delaware's courts over [the appellee].

*Papendick v. Bosch,* 410 A.2d at 152.[30] Since this Court's decision in *Papendick,* the United States Supreme Court has provided further guidance for an assessment of individual contacts with the forum state which would support an exercise of specific jurisdiction. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

■ *Burger King Corp.* held that "the constitutional touchstone [of the determination whether an exercise of personal jurisdiction comports with due process] remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Id.* at 474, 105 S.Ct. at 2183 (citing *International Shoe Co. v. Washington,* 326 U.S. at 316, 66 S.Ct. at 158). In other words, the minimum contacts which are necessary to establish jurisdiction must relate to some act by which the defendant has deliberately created continuing obligations between himself (itself) and the forum. Consequently, his (its) activities are shielded by the benefits and protection of the forum's laws and it is not unreasonable to require him (it) to submit to the forum's jurisdiction. *Burger King Corp. v. Rudzewicz,* 471 U.S. at 475–76, 105 S.Ct.

**28.** For a discussion of the "Cannon Doctrine," see Brilmayer & Paisley, *Personal Jurisdiction and Substantive Legal Relations: Corporations, Conspiracies and Agency,* 74 Calif.L.Rev. 1, 2–8 (1986). For a case distinguishing *Cannon,* see *Waters v. Deutz Corp.,* Del.Supr., 479 A.2d 273, 275 (1984).

**29.** In *Keeton v. Hustler Magazine, Inc.,* the defendants were a corporation, its holding company, and a holding company stockholder. The Court upheld jurisdiction against the corporation but remanded the question of jurisdiction over the other parties. 465 U.S. at 781, 104 S.Ct. at 481–82.

**30.** Subsequent to *Papendick,* this Court considered but did not answer the question of whether the ownership of stock in a Delaware corporation, coupled with Delaware's *in rem* jurisdictional statute, would permit Delaware to exercise jurisdiction over a foreign parent corporation in a suit to cancel the stock of the subsidiary Delaware corporation that was being held by the foreign parent corporation. *Istituto Bancario Italiano v. Hunter Eng'g. Co.,* Del. Supr., 449 A.2d 210, 210–222 (1982).

at 2183–84.[31] The *Burger King Corp.* rationale is entirely consistent with our holding in *Papendick* that the creation of a Delaware subsidiary is such an act. *Burger King Corp.* supports our conclusion in *Papendick* that a foreign corporation cannot use the laws of this State to govern the operations of its subsidiary and then, in a suit relating to the operation of the subsidiary, claim that jurisdiction in Delaware offends traditional notions of fair play. *Papendick v. Bosch*, 410 A.2d at 152–53.[32]

GenCorp seeks to distinguish *Papendick* on two grounds. First, it alleges that GenCorp did not *form* RKO General as a subsidiary corporation but instead purchased it after it had already been formed. Second, GenCorp argues that in *Papendick*, it was appropriate for Delaware to assert jurisdiction over the contract dispute but that in the present case, Delaware has little or no connection with Sternberg's double derivative action. We do not find either of GenCorp's arguments to be persuasive.

### GenCorp and Delaware

Although GenCorp did not *form* RKO General as a Delaware subsidiary, it knew at the time of its acquisition that RKO General was incorporated under the laws of the State of Delaware. The record reflects that GenCorp has owned and operated RKO General as a Delaware subsidiary since 1955—more than 30 years. We find that the difference between creating a wholly owned subsidiary in Delaware and purchasing a Delaware subsidiary is a distinction without significance, when the subsidiary is not thereafter reincorporated in another state.

The decision to reincorporate or not to reincorporate in a particular jurisdiction is a deliberate one. The majority stockholders in a parent corporation can vote to change the state of incorporation of the parent, or of a subsidiary, anytime there is a preference to be governed by the laws of another jurisdiction. Ratner & Schwartz, *The Impact of Shaffer v. Heitner on the Substantive Law of Corporations*, 45 Brooklyn L.Rev. 641, 642 (1979).[33] In fact, after the United States Supreme Court decision in *Shaffer*, the Delaware corporation involved in that litigation, Greyhound, reincorporated in Arizona. *Id.* at 653–54. Conversely, it is well known that many corporations have chosen to incorporate or reincorporate in the State of Delaware, although the reasons for the decision have been debated. These competing positions are discussed at length in Macey & Miller, *Toward an Interest–Group Theory of Delaware Corporate Law*, 65 Tex.L.Rev. 469 (1987).[34]

**31.** In *Burger King Corp.*, the issue was a "carefully structured 20–year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida." 471 U.S. at 480, 105 S.Ct. at 2186. The Court held "[i]n light of Rudzewicz' voluntary acceptance of the long-term and exacting regulation of his business from Burger King's Miami headquarters, the 'quality and nature' of his relationship to the company in Florida can in no sense be viewed as 'random,' 'fortuitous,' or 'attenuated.'" *Id.* (citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299, 100 S.Ct. 559, 581, 62 L.Ed.2d 490 (1980)). Similarly, GenCorp has submitted its wholly owned subsidiary, RKO General, to the exacting regulation of the laws of Delaware for thirty years and its relationship thereto, cannot be viewed, as random, fortuitous, or attenuated. *Burger King Corp. v. Rudzewicz*, 471 U.S. at 480, 105 S.Ct. at 2186.

**32.** *See Dentsply Int'l Inc. v. Pentron Corp.*, 648 F.Supp. 856, 860 (D.Del.1986); *Blue Ball Properties, Inc. v. McClain*, 658 F.Supp. 1310, 1317–18 (D.Del.1987).

**33.** "The normal technique for changing the state of incorporation is to establish a new corporation under the laws of the desired state and merge the existing corporation into it." Ratner & Schwartz, *The Impact of Shaffer v. Heitner on the Substantive Law of Corporations*, 45 Brooklyn L.Rev. 641, 642 n. 9 (1979).

**34.** "Judges Frank Easterbrook and Ralph Winter and Professors Daniel Fischel, Roberta Romano, and other market-oriented legal scholars posit that Delaware corporate law rules are efficient, that is, they systematically advance shareholder welfare." Macey & Miller, *Toward an Interest–Group Theory of Delaware Corporate Law*, 65 Tex.L.Rev. 469, 473 (1987) (citing at n. 7, R. Winter, *Government and the Corporation* 5–46, 69–73 (1978); Easterbrook, *Antitrust and the Economics of Federalism*, 26 J.L. & Econ. 23, 33–35 (1983); Fischel, *The "Race to the Bottom"*

■ Although scholars may debate its motivation, the fact remains that for more than thirty years, GenCorp has made the conscious decision to operate RKO General, its subsidiary, as a *Delaware* corporation. For more than thirty years, GenCorp has benefited from the protections of the Delaware law in operating RKO General for commercial gain, including the benefits afforded to it directly as a shareholder of a Delaware corporation.[35] We conclude that GenCorp intentionally established and maintained minimum contacts with Delaware by its decision to continue to operate its wholly owned subsidiary, RKO General, as a Delaware corporation.[36]

### Delaware and Sternberg's Double Derivative Claim

■ Once it has been decided that a defendant purposefully established minimum contacts with the forum State, these contacts must be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice. *Burger King Corp. v. Rudzewicz,* 471 U.S. at 477, 105 S.Ct. at 2185.[37] However, as the United States Supreme Court also noted in that case, the due process clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed. *Id.* at 474, 105 S.Ct. at 2183. When a corporate defendant who has purposefully directed its activities at a forum, seeks to defeat the forum's jurisdiction, it "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 477, 105 S.Ct. at 2185.

■ GenCorp's final argument is an attempt to meet that burden. GenCorp points out since it is an Ohio corporation, Ohio law must be applied to one aspect of

Revisited: *Reflections on Recent Developments in Delaware's Corporation Law,* 76 Nw.U.L.Rev. 913, 919–20 (1982); Romano, *Law as a Product: Some Pieces of the Incorporation Puzzle,* 1 J.L. Econ. & Org. 225, 265–73 (1985)). In contrast, those who follow in the tradition of Adolf Berle and Gardiner Means take a contrary view. Macey & Miller, *Toward An Interest–Group Theory of Delaware Corporate Law,* 65 Tex.L.Rev. 469, 473 (1987). *See* A. Berle & G. Means, *The Modern Corporation and Private Property* (1932); *see also* Cary, *Federalism and Corporate Law: Reflections Upon Delaware,* 83 Yale L.J. 663, 665–66 (1974); Eisenberg, *The Modernization of Corporate Law: An Essay for Bill Cary,* 37 U.Miami L.Rev. 187, 188–91, 196–98, 202–09 (1983); Schwartz, *Federalism and Corporate Governance,* 45 Ohio St.L.J. 545, 552–55 (1984).

**35.** "Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State ... So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Burger King Corp. v. Rudzewicz,* 471 U.S. at 476, 105 S.Ct. at 2184 (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. at 774–75, 104 S.Ct. at 1478) (emphasis in original). This conclusion makes it unnecessary for this Court to address the facts which support Sternberg's argument that GenCorp actually operated a portion of its tire business in Delaware.

**36.** *Cf. Mazzotti v. W.J. Rainey, Inc.,* Del.Ch., 77 A.2d 67, 70 (1950) (holding that mere majority ownership by a foreign corporation of the stock of a Delaware corporation did not amount to doing business in this State). This Court will leave for another day a decision concerning the validity of serving, pursuant to 8 *Del.C.* § 382, a nonregistered foreign corporation, which is the owner of a Delaware subsidiary. In this case, service of process was accomplished upon GenCorp by serving its registered agent in the State of Delaware, appointed pursuant to 8 *Del.C.* § 376. Service of process was accomplished in *Papendick* by notice and attachment of the foreign parent corporation's stock interest in the Delaware subsidiary. *Papendick v. Bosch,* 410 A.2d at 149. *See* 10 *Del.C.* § 3507 and 8 *Del.C.* § 169. We also note that commentators have argued that 10 *Del.C.* § 3114 (service on nonresident directors) could be amended to provide for service of process upon nonresident shareholders who own a controlling interest in Delaware corporations. Ratner and Schwartz, *The Impact of Shaffer v. Heitner on the Substantive Law of Corporations,* 45 Brooklyn L.Rev. 641, 653 (1979).

**37.** The other factors to be considered are " 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.' " *Burger King Corp. v. Rudzewicz,* 471 U.S. at 477, 105 S.Ct. at 2185 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980)).

Sternberg's double derivative action. Therefore, GenCorp argues that Delaware has a tenuous connection with this litigation and should not exercise jurisdiction in this case which may require it to apply Ohio law to a portion of Sternberg's claim. A similar argument has been considered and rejected by the United States Supreme Court for three reasons in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).[38]

First, "[t]he issue is personal jurisdiction, not choice of law." *Id.* at 778, 104 S.Ct. at 1480 (quoting *Hanson v. Denckla*, 357 U.S. 235, 254, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)).

> The question of the applicability of New Hampshire's statute of limitations to claims for out-of-state damages presents itself in the course of litigation only after jurisdiction over respondent is established, and we do not think that such choice-of-law concerns should complicate or distort the jurisdictional inquiry.

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. at 778, 104 S.Ct. at 1480. GenCorp is an Ohio corporation. In this case, the applicability of Ohio law to a portion of Sternberg's claim may present itself during the course of litigation, but only after jurisdiction over GenCorp in Delaware is established. If that issue is presented, Delaware's well established conflict of laws principles require that the laws of the jurisdiction of incorporation govern internal corporate relationships. *McDermott, Inc. v. Lewis*, Del.Supr., 531 A.2d 206, 215 (1987).[39] However, that choice of law con-

cern should not "complicate or distort the jurisdictional inquiry." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. at 778, 104 S.Ct. at 1480.[40]

Second, Delaware has a legitimate interest in Sternberg's double derivative claim. As the Court in *Keeton* noted:

> We agree that the "fairness" of haling respondent into a New Hampshire court depends to some extent on whether respondent's activities relating to New Hampshire are such as to give that State a legitimate interest in holding respondent answerable on a claim related to those activities.... But insofar as the State's "interest" in adjudicating the dispute is a part of the Fourteenth Amendment due process equation, as a surrogate for some of the factors already mentioned, ... we think the interest is sufficient.

*Id.* at 775–76, 104 S.Ct. at 1479 (citations omitted). In this case, GenCorp used the benefits and protections of the State of Delaware to maintain a corporate subsidiary. Sternberg's double derivative suit alleges that the operation of RKO General, the wholly owned Delaware subsidiary, has caused damage to RKO General, GenCorp and the GenCorp stockholders. Delaware has an interest in holding accountable those responsible for the operation of a Delaware corporation. Moreover, just as the internal affairs doctrine mandates the application of Ohio law to the internal operations of GenCorp, that same doctrine mandates the application of Delaware law to

---

**38.** In *Keeton*, petitioner, a resident of New York, brought a libel suit against the respondent magazine publisher, an Ohio corporation, in the New Hampshire District Court. The complaint alleged jurisdiction by reason of diversity of citizenship. The respondent's contacts with New Hampshire consisted of the sales of 15,000 copies of its nationally published magazine. 465 U.S. at 772, 104 S.Ct. at 1477.

**39.** This Court has recently held that the application of the "internal affairs doctrine" is not merely a principle of conflict of laws:

> It is also one of serious constitutional proportions—under due process, the commerce clause and the full faith and credit clause—so that the law of one state governs the relationships of a corporation to its stockholders,

directors and officers in matters of internal corporate governance. The alternatives present almost intolerable consequences to the corporate enterprise and its managers. With the existence of multistate and multinational organizations, directors and officers have a significant right, under the fourteenth amendment's due process clause, to know what law will be applied to their actions. Stockholders also have a right to know by what standards of accountability they may hold those managing the corporation's business and affairs.

*McDermott v. Lewis*, 531 A.2d at 216–17.

**40.** *See* Twitchell *The Myth of General Jurisdiction*, 101 Harv.L.Rev. 610, 654–56 (1988).

the internal operation of RKO General. It is a basic principle of Delaware corporation law that directors of Delaware corporations are subject to fiduciary duties. *Anadarko Petroleum Corp. v. Panhandle Eastern Corp.,* Del.Supr., 545 A.2d 1171, 1174 (1988). Specifically, the Delaware law provides that "in a parent and wholly owned subsidiary context, the directors of the subsidiary are obligated only to manage the affairs of the subsidiary in the best interests of the parent and its shareholders." *Id.* (citing *Sinclair Oil Corp. v. Levien,* Del.Supr., 280 A.2d 717, 720 (1971); *Goodman v. Futrovsky,* Del.Supr., 213 A.2d 899, 902 (1965), *cert. denied,* 383 U.S. 946, 86 S.Ct. 1197, 16 L.Ed.2d 209 (1966)).

The United States Supreme Court has recognized that "[a] State has an interest in promoting stable relationships among parties involved in the corporations it charters." *CTS Corp. v. Dynamics Corp. of America,* 481 U.S. 69, 107 S.Ct. 1637, 1651, 95 L.Ed.2d 67 (1987). In particular, the Supreme Court noted that states have "a substantial interest in preventing the corporate form from becoming a shield for unfair business dealing." *Id.* 107 S.Ct. at 1651–52. In this case, Delaware has a legitimate interest in providing a forum for hearing and applying Delaware law to a double derivative claim related to the internal operation of a wholly owned Delaware subsidiary. *See id.; McDermott, Inc. v. Lewis,* Del.Supr., 531 A.2d 206 (1987); *Armstrong v. Pomerance,* Del.Supr., 423 A.2d 174, 178 (1980).

Third, *Keeton* noted that "New Hampshire also has a substantial interest in cooperating with other States, through the 'single publication rule,' to provide a forum for efficiently litigating all issues and damages claims arising out of a libel in a unitary proceeding." *Keeton v. Hustler Magazine, Inc.,* 465 U.S. at 777, 104 S.Ct. at 1479. In this case, Delaware also has an interest in providing a forum for efficiently litigating, in a single proceeding, all issues and damages arising out of a double deriv-ative claim alleging harm based upon the foreign parent corporation's maintenance of a Delaware subsidiary.

 In a shareholder's derivative suit, the shareholder sues on behalf of the corporation for harm done to the corporation. Therefore, the damages recovered in the suit are paid to the corporation. R. Clark, *Corporate Law,* 639–40 (1986).[41] In a single derivate suit the corporation is an indispensable party. 13 *W. Fletcher Cyclopedia of the Law of Private Corporations* § 5997 (rev. perm. ed. 1984). The presence of the corporation is required so that it can receive the monetary award in the event of recovery. The same logic has been held to apply in a double derivative suit. *Levine v. Milton,* Del.Ch., 219 A.2d 145, 146 (1966). The parent corporation is an indispensable party in a double derivative suit against a subsidiary because any recovery for losses suffered by the subsidiary that were being sued upon would go to the parent. Thus, the Court of Chancery was correct in concluding that if it did not have jurisdiction over the parent corporation, the entire double derivative suit must be dismissed. *Sternberg v. O'Neil,* 532 A.2d at 998–99.

### *Delaware's Exercise of Specific Jurisdiction is Proper*

 In *Papendick,* this Court observed that Delaware was the only jurisdiction in which the foreign parent and the Delaware subsidiary could be sued in *one* action. *Papendick v. Bosch,* Del.Supr., 410 A.2d 148, 153 (1979), *cert. denied,* 446 U.S. 909, 100 S.Ct. 1837, 64 L.Ed.2d 262 (1980). Since in a double derivative action, both the parent and the subsidiary corporations are indispensable parties, the subsidiary's state of incorporation may be the only forum in which *both* corporations can be sued *at all.* *A fortiori,* the "traditional notions of fair play and substantial justice" can only be offended if Delaware does not exercise specific jurisdiction. *Id.* The Delaware courts

---

**41.** The normal derivative suit was "two suits in one: (1) The plaintiff brought a suit in equity against the corporation seeking an order against it; (2) to bring a suit for damages or other legal injury for damages or other relief against some third person who had caused legal injury to the corporation." R. Clark, *Corporate Law,* 639–40 (1986).

and legislature have long recognized a "need for consistency and certainty in the interpretation and application of Delaware corporation law and the desirability of providing a definite forum in which shareholders can challenge the actions of corporate management without having to overcome certain procedural barriers which can be particularly onerous in the context of derivative litigation." *Armstrong v. Pomerance,* 423 A.2d at 178.[42]

■ We have evaluated Delaware's interest in adjudicating Sternberg's dispute, Sternberg's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of the controversies, and the shared interests of Delaware and Ohio in furthering fundamental substantive social policies. *See Burger King Corp. v. Rudzewicz,* 471 U.S. at 477, 105 S.Ct. at 2185 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980)).[43] The United States Supreme Court has observed that "[t]hese considerations sometimes "serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King Corp. v. Rudzewicz,* 471 U.S. at 477, 105 S.Ct. at 2185 (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. at 780, 104 S.Ct. at 1481; *Calder v. Jones,* 465 U.S. 783, 788–89, 104 S.Ct. 1482, 1486–87, 79 L.Ed.2d 804 (1984); *Megee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223–24, 78 S.Ct. 199, 201, 2 L.Ed. 2d 223 (1957)). However, we find that these considerations compel the conclusion that it is reasonable for Delaware to exercise jurisdiction in this double derivative law suit. Clearly, Delaware has constitutional authority to exercise jurisdiction in double derivative actions involving domestic corporations which owe their very existence and attributes to Delaware law. *Cf. CTS Corp. v. Dynamics Corp. of America,* 107 S.Ct. at 1652; *Armstrong v. Pomerance,* 423 A.2d at 178. The internal affairs doctrine requires nothing less. *McDermott, Inc. v. Lewis,* 531 A.2d at 216–17.

Delaware has more than an interest in providing a sure forum for shareholder derivative litigation involving the internal affairs of its domestic corporations. *Armstrong v. Pomerance,* 423 A.2d at 178.[44] Delaware has an obligation to provide such a forum. All "traditional notions of fair play and substantial justice" would be offended if Delaware permitted GenCorp to use its laws to maintain a Delaware subsidiary and then declined to exercise jurisdiction over GenCorp in a double derivative suit, where GenCorp was an indispensable party. *Papendick v. Bosch,* 410 A.2d at 153.

We conclude that fairness and justice permit jurisdiction to be asserted by Delaware under the totality of the circumstances of this case. We find that the exercise of specific jurisdiction in this case is consistent with the requirements of due process. We hold that GenCorp's ownership of RKO General is a minimum contact with Delaware which is sufficient to support an exercise of specific jurisdiction by the Delaware Courts over GenCorp to hear and decide Sternberg's double derivative complaint.[45] This holding is an independent

---

**42.** "A state's desire as a sovereign to provide an orderly process for the adjudication of disputes is a rational basis for providing a forum." Twitchell, *The Myth of General Jurisdiction,* 101 Harv.L.Rev. 610, 655 (1988). *See also* Redish, *Due Process, Federalism, and Personal Jurisdiction: A Theoretical Evaluation,* 75 Nw.U.L.Rev. 1112, 1134 (1981).

**43.** We have also considered the burden on GenCorp. We have concluded that it is not unfair to subject GenCorp to the burden of litigating in Delaware in a dispute arising from its connection with Delaware. *See Burger King Corp. v. Rudzewicz,* 471 U.S. at 474, 105 S.Ct. at 2183

(citing *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201 (1957)).

**44.** *Cf. Shaffer v. Heinter,* 433 U.S. 186, 219–228, 97 S.Ct. 2569, 2588–92, 53 L.Ed.2d 683 (1977) (Brennan, J., concurring in part and dissenting in part).

**45.** We note that legal scholars have suggested two ways of establishing jurisdiction over the parent *based on jurisdiction over the subsidiary:*
These two methods for establishing jurisdiction involve showing either that the absent parent instigated the subsidiary's local activities or that the absent parent and the subsidiary are in fact a single legal entity. The first

and alternative basis for reversing the Court of Chancery's decision not to exercise specific jurisdiction over GenCorp.

## PERSONAL JURISDICTION—INDIVIDUAL NONRESIDENT DEFENDANTS

The final question which we address is whether the Court of Chancery erred, as a matter of law, when it dismissed Sternberg's complaint as to certain individual nonresident defendants for lack of personal jurisdiction. Sternberg's complaint named as defendants several present or former officers of RKO General, as well as officers or directors of GenCorp, i.e., Messrs. Michael G. O'Neil, John O'Neil, Fitzgerald, Frankl, Henkel, Morley, Spitznagel, Tullis, Walsh, Garvin, Hayford, Mansfield, Pittenger and Dalton. *Sternberg v. O'Neil*, 532 A.2d at 999. None of these individuals are directors of RKO General, the Delaware corporation. The Court of Chancery noted that no effort had been made to serve

these individual nonresident defendants. The Court of Chancery also noted that Sternberg did not seek any discovery on the issue of jurisdiction over the nonresident defendants who were not directors of the Delaware corporation. The Court of Chancery found no facts in the record to "justify service of process or jurisdiction" and dismissed Sternberg's complaint as to these individual defendants. *Id.*

■■■■ Our standard of review on appeal is to determine whether the Court's findings of fact are supported by substantial evidence. *Levitt v. Bouvier*, Del.Supr., 287 A.2d 671, 673 (1972); *Bartley v. Davis*, Del.Supr., 519 A.2d 662, 664 (1986).[46] If the trial court's findings of facts "are sufficiently supported by the record and are the product of an orderly and logical deductive process, in the exercise of judicial restraint," we must accept those findings. *Levitt v. Bouvier*, 287 A.2d at 673. We have reviewed the trial court's findings of

method we call *attribution*, the second *merger*. They are obviously similar in that both involve disregarding separate entity status and shifting responsibility for the subsidiary's actions onto the parent. The difference between attribution and merger lies in the extent of this shifting of responsibility. Under the attribution theory, only the precise conduct shown to be instigated by the parent is attributed to the parent; the rest of the subsidiary's actions still pertain only to the subsidiary. The two corporations remain distinct entities. If merger is shown, however, all of the activities of the subsidiary are by definition activities of the parent. Merger requires a greater showing of interconnectedness than attribution, but once shown, its scope is broader. Under both theories, the parent is declared responsible for in-state activities of the subsidiary, but in attribution the responsibility results from causing a separate legal entity to act while in merger there is no separate legal entity at all.

Brilmayer & Paisley, *Personal Jurisdiction and Substantive Legal Relations: Corporations, Conspiracies and Agency*, 74 Calif.L.R. 1, 12 (1986) (emphasis in original). The allegations in Sternberg's double derivative law suit appear to fit into the attribution method for establishing jurisdiction. In this double derivative action, Sternberg alleges that the parent-subsidiary relationship was simply the vehicle by which GenCorp caused RKO General to carry out its own wishes, which then ultimately led to the injury to GenCorp. The attribution principle is mentioned in a footnote in *Burger King Corp.*, where the United States Supreme Court said, "[w]e

have previously noted that when commercial activities are 'carried on in behalf of' an out-of-state party, those activities may sometimes be ascribed to the party, ... at least where he is a 'primary participan[t]' in the enterprise and has acted purposefully in directing those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. at 479 n. 22, 105 S.Ct. at 2186 n. 22 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945); *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984)).

Sternberg also argues that the corporate existence of GenCorp and RKO General should be ignored. In essence, Sternberg argues for the merger method of establishing jurisdiction based upon the findings of the FCC. *Cf. Lucas v. Gulf & Western Industries, Inc.*, 666 F.2d 800, 806 (1981). Our analysis makes it unnecessary to base a finding of specific jurisdiction upon either one of these theories. However, we recognize the merit of both approaches if the facts in a given case support their applicability. *See Waters v. Deutz Corp.*, Del.Supr., 479 A.2d 273 (1984); *Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.*, 456 F.Supp. 831, 839 (D.Del. 1978); *Cf. Akzona, Inc. v. E.I. Du Pont De Nemours & Co.*, 607 F.Supp. 227, 237–40 (D.Del. 1984).

**46.** We find that the conspiracy theory of jurisdiction which has been argued on appeal was not *"fairly* presented to the trial court." Supr. Ct.R. 8 (emphasis added). *Cf. Istituto Bancario Italiano v. Hunter Eng'g Co., Inc.*, Del.Supr., 449 A.2d 210, 222–27 (1982).

fact and have determined that they meet the "orderly and logically deductive" test. Therefore, we affirm the Court of Chancery's decision to dismiss Sternberg's complaint against the individual nonresident defendants who are not directors of the Delaware corporation, based upon a lack of personal jurisdiction.

However, we reach a contrary conclusion with respect to the individual nonresident defendants who are directors of the Delaware corporation, RKO General. Those individuals are subject to personal jurisdiction in Delaware courts. 10 *Del.C.* § 3114; *Armstrong v. Pomerance*, 423 A.2d at 178–79. Sternberg's complaint was dismissed as to these individual nonresident defendants solely because of the Court of Chancery's conclusion that it had no jurisdiction over GenCorp and that GenCorp was an indispensable party. We have reversed the decision by the Court of Chancery to dismiss Sternberg's complaint against GenCorp. Since that decision was the underlying premise for dismissing the action as to the nonresident directors of the Delaware corporation, the dismissal of Sternberg's complaint as to those nonresident Delaware directors must also be reversed.

## CONCLUSION

The judgment of the Court of Chancery dismissing Sternberg's complaint as to GenCorp, RKO General, and the individual nonresident directors of RKO General is REVERSED. The judgment of the Court of Chancery dismissing Sternberg's complaint as to the nonresident individuals, who are not directors of RKO General, is AFFIRMED.