# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

_____
:
2009 CAIOLA FAMILY TRUST,        :
a New Jersey trust, and LOUIS CORTESE,  :
:
        Plaintiffs,     :
:
        v.        :     C.A. No. 8028-VCP
:
PWA, LLC, a Kansas limited liability   :
company, and WARD KATZ,      :
:
        Defendants,    :
:
        and      :
:
DUNES POINT WEST ASSOCIATES,   :
LLC, a Delaware limited liability    :
company,        :
:
        Nominal Defendant.  :
_____  :

## MEMORANDUM OPINION

Date Submitted: July 17, 2014
Date Decided: December 18, 2014

Kurt M. Heyman, Esq., Patricia L. Enerio, Esq., Dawn Kurtz Crompton, Esq., PROCTOR HEYMAN LLP, Wilmington, Delaware; Gary M. Fellner, Esq., Michael J. Naporano, Esq., PORZIO BROMBERG & NEWMAN P.C., New York, New York; _Attorneys for Plaintiffs_.

Thomas E. Hanson, Jr., Esq., Patricia A. Winston, Esq., MORRIS JAMES LLP, Wilmington, Delaware; _Attorneys for Defendants_.

**PARSONS, Vice Chancellor.**

This case concerns a Delaware limited liability company that was formed to own and operate a residential apartment complex in Kansas. The plaintiffs are non-managing members of the company who own 90% of its membership interests. The defendants are a Kansas LLC, which is a 10% interest holder and managing member of the company, and an individual who is the managing member of the Kansas LLC. The plaintiffs accuse the defendants of various breaches of the company's operating agreement and their fiduciary duties, which allegedly have resulted in damage to the company. According to the plaintiffs, these wrongs justify the removal of the Kansas LLC from its position as managing member.

The defendants have moved to dismiss the complaint on several grounds. Both defendants contend that the complaint should be dismissed for failure to state a claim under Court of Chancery Rule 12(b)(6), or in the alternative, on grounds of *forum non conveniens*. The individual defendant, who resides in Kansas, also seeks dismissal of the complaint as it relates to him for the additional reason that he lacks sufficient minimum contacts with the State of Delaware to be subject to personal jurisdiction in this Court. Around the same time as the defendants' motion to dismiss, the plaintiffs moved for partial summary judgment, arguing that certain of the defendants' alleged actions entitle the plaintiffs to remove the defendant LLC from its position as managing member.

For the reasons stated in this Memorandum Opinion, I deny the defendants' motion, except as it relates to the plaintiffs' claim for waste, which I dismiss. I also deny the plaintiffs' motion for partial summary judgment.

1

## I. BACKGROUND[1]

### A. Parties

Plaintiffs are the 2009 Caiola Family Trust ("CFT") and Louis Cortese. CFT is a New Jersey trust, and Cortese, an individual residing in New York, is its trustee. Plaintiffs are Non-Managing Members[2] of the nominal Defendant, Dunes Point West, LLC ("Dunes Point" or the "Company"), a Delaware limited liability company with its principal place of business in Kansas. CFT and Cortese hold respectively 86.1% and 3.9% of the total Member Interests in the Company.

Defendant PWA, LLC ("PWA") is a Kansas limited liability company, with its principal place of business in Kansas. Since the Company's inception, PWA has been its Managing Member and the holder of 10% of Dunes Point's Member Interests. Defendant Ward Katz (together with PWA, "Defendants") is an individual residing in Kansas. He holds a 10% interest in PWA and is its managing member.

### B. Facts

#### 1. The Point West Project

Dunes Point was formed in 2006 for the purpose of acquiring and operating the Point West Apartments, a 172-unit multi-family apartment complex located in Lenexa,

---

[1] Except as otherwise noted, the relevant facts are drawn from Plaintiffs' Amended Verified Complaint (the "Complaint" or "Compl.") and the documents attached or integral thereto.

[2] Capitalized terms not otherwise defined in this Memorandum Opinion are defined in the Dunes Point Operating Agreement which was attached to the Complaint as Exhibit A [hereinafter "OA"].

2

Kansas ("the Project"). PWA, NDC Point West, LLC ("NDC Point West"), and Block Investment Group Point West, LLC ("Block") originally held all the Company's Member Interests, with stakes of 10%, 12%, and 78%, respectively. Block later assigned its interests to Cortese and Louis S. Caiola. CFT succeeded to Caiola's interest in January 2009 and acquired and succeeded to NDC Point West's stake in June 2012, bringing its ownership of Dunes Point to its current level.

Around the time of Dunes Point's formation, PWA appointed non-party Dunes Residential Services, Inc. ("DRS"), a Kansas corporation, as the Property Manager charged with overseeing the Project according to the terms of an August 14, 2006 "Management Agreement" between DRS and the Company. In addition to controlling PWA as its managing member, Katz owns DRS. Plaintiffs allege, therefore, that Katz has controlled the operation and management of the Company and the Project at all relevant times.

### 2. Discord at Dunes Point

At some point in 2012, Plaintiffs became dissatisfied with the Project's performance, and "sought to exert greater influence to improve its operations."[3] In July 2012, Plaintiffs called for and obtained by consent a vote of Dunes Point's Non-Managing Members, by which Plaintiffs determined to remove DRS and hire GREP South L.P. ("GREP") as Property Manager. GREP is a national company engaged in residential property management; it is apparently unaffiliated with either Plaintiffs or

---

[3] Compl. ¶ 15.

3

Defendants. Plaintiffs promptly notified PWA of the Non-Managing Members' vote and instructed PWA to implement it, but PWA refused. Through an affiliate, Curo Enterprises, LLC ("Curo Enterprises"), Plaintiffs then sued in Kansas state court to remove DRS as Property Manager. In September 2013, DRS resigned from that position. Thereafter, GREP replaced DRS and it continues to manage the day-to-day operations of the Project.

Plaintiffs' grievances regarding PWA's management of Dunes Point and the Project fall into five categories. They allege that Defendants: (1) improperly paid asset management fees; (2) provided Plaintiffs with misleading financial reports; (3) failed to improve and maintain the Project and thereby caused a loss of profits; (4) committed waste and other breaches of fiduciary duty; and (5) violated the Operating Agreement's "Key Person" provision. I briefly recite the facts relevant to each of these allegations.

### a. The asset management fees

DRS and non-party NDC Capital Partners, LLC ("NDC Capital") were the original "co-sponsors" of Dunes Point.[4] NDC Capital solicited passive equity investors for the Company and until June 2012 served as "asset manager" of the Project, distributing operational and financial information about the Project to investors and acting as a liaison between them and the Company. The Operating Agreement entitled NDC Capital to receive certain "Asset Management Fees" for performing these services. According to Section 8.3(c) of the Agreement, however, the Asset Management Fee was

---

[4]     Compl. ¶ 11.

payable "only to the extent of available Net Cash Flow from Operations and Net Event Proceeds, after payment of all outstanding party debts and liabilities of the Company then due and payable . . . ."[5] That same section provides that any installment of the Asset Management Fee which is not paid out of Net Cash Flow from Operations or Net Capital Event Proceeds "shall accrue, without interest, and continue to be due to NDC Capital Partners . . . ."[6] Plaintiffs allege that Dunes Point has not had Net Cash Flow from Operations or Net Capital Event Proceeds, as those terms are defined in the Operating Agreement, at any time since the Company's formation in 2006. PWA allegedly made Asset Management Fee payments to NDC Capital on a quarterly basis up until June 2012, however, asserting that Dunes Point in fact had sufficient Net Cash Flow from Operations to justify those payments. The payments totaled $146,748 in the aggregate. In a July 23, 2012 letter, Plaintiffs demanded that PWA repay the allegedly improper Asset Management Fees to the Company. PWA has refused.

### b.     The financial and operational reports

In addition to disagreeing with PWA about the proper accounting of Net Cash Flow as it relates to the Asset Management Fees, Plaintiffs aver that the financial and operational reports provided to them by PWA consistently have been inaccurate or misleading. For example, Plaintiffs accuse PWA of manipulating Dunes Point's financial statements to give the appearance of adequate available cash flow and positive net

---

[5]     OA § 8.3(c).

[6]     *Id*.

operating income by treating repayments of principal on the Company's debt improperly and delaying the payment of certain bills. PWA also is alleged to have misreported tenant receivables to inflate the Company's assets, when in fact those items should have been written off as uncollectible debt.

Plaintiffs further maintain that PWA misleadingly characterized certain distributions made to Plaintiffs as a "return on investment," when the funds actually were being drawn not from operational cash flow but from Plaintiffs' own initial contributions to the Company. More generally, Plaintiffs claim that PWA, "as Managing Member, is ultimately responsible for providing accurate financial reports of the Company to Plaintiffs and its affiliate, Curo Enterprises,"[7] but has failed to do so.

### c.      Improper maintenance of the Project and lost profits

Plaintiffs allege that PWA provided an investment memorandum indicating that tenant rents at the Project would increase by 10% to 15%, but that they remain well below market value rates. While income has stayed below Plaintiffs' expectations, costs allegedly have far exceeded them: according to the Complaint, total expenses at the Project have increased by over 30% in comparison with the management that preceded PWA. In this regard, Plaintiffs point to various expense reimbursements DRS paid itself and to a 65% increase in payroll costs during PWA's management tenure, which exceeds averages at comparable properties.[8] Plaintiffs allege that the lost profits resulting from

---

[7]      Compl. ¶ 50.

[8]      *Id*. ¶¶ 52-55.

this mismanagement over the last six years exceed $950,000, and the total amount of expenses that should be repaid to the Company exceeds $1.1 million.

### d. Allegations of waste and other breaches of PWA's fiduciary duties

Lastly, the Complaint includes a litany of misdeeds that Plaintiffs contend constitute waste or breaches of the fiduciary duties owed by PWA to Dunes Point. According to the Complaint, after GREP became the Property Manager, Plaintiffs discovered that PWA had failed to perform necessary physical maintenance and upkeep at the Project. PWA also neglected to keep tenant security deposits in a separate bank account, as allegedly required by law, and failed to pay any dividends to the Company's interest holders. Plaintiffs further allege that "Katz is no longer actively involved with PWA,"[9] even though he is a "Key Person" and the involvement of a Key Person is required under certain sections of the Operating Agreement.

### C. Procedural History

Plaintiffs filed their original complaint on November 13, 2012. PWA timely removed this action to the United States District Court for the District of Delaware, and Plaintiffs moved for a remand back to this Court. PWA opposed that motion, but filed its answer and counterclaim here on December 4, 2012. On July 10, 2013, the District Court granted Plaintiffs' motion to remand.

I entered a status quo order on August 28, 2013 and a scheduling order shortly thereafter. During November 2013, both sides moved for summary judgment with

---

[9]    *Id.* ¶ 63.

respect to the proper interpretation of Section 8.4 of the Operating Agreement. Plaintiffs had relied on that section as authorizing them to call for and execute a vote of the Non-Managing Members, for the purpose of removing DRS as Property Manager. I held argument on those cross-motions, as well as Plaintiffs' motion to amend their Complaint and add Katz as a Defendant, on January 10, 2014. At the argument, I granted Plaintiffs' motion to amend. By Memorandum Opinion dated April 30, 2014, I granted summary judgment in favor of Defendants' interpretation of Section 8.4, finding that it unambiguously does not provide the Non-Managing Members with the affirmative power to mandate significant actions by the Company. Rather, the section gives the Non-Managing Members a negative right to veto such actions under certain circumstances.[10]

Plaintiffs filed an amended complaint on January 13, 2014, which is the operative Complaint today. Defendants moved to modify this Court's status quo order on January 17, and six days later, to dismiss the Complaint in its entirety for failure to state a claim and for lack of personal jurisdiction as to Katz. Concurrently with their opposition to Defendants' motion to modify the status quo order, Plaintiffs filed another motion for summary judgment. That motion sought to remove PWA as Managing Member, contending, among other things, that PWA improperly had commingled tenant security deposits with the Company's operating funds in violation of Kansas law. Briefing on Defendants' motions to dismiss and to modify the status quo order and Plaintiffs' motion

---

[10]    *2009 Caiola Family Trust v. PWA, LLC*, 2014 WL 1813174, at *8-11 (Del. Ch. Apr. 30, 2014).

for partial summary judgment proceeded at the same time.[11] On July 17, 2014, I heard argument on those three motions. This Memorandum Opinion reflects my rulings on Defendants' motion to dismiss and Plaintiffs' motion for partial summary judgment.[12]

## II. ANALYSIS

The Complaint asserts five counts: Count I seeks a declaratory judgment that under the Operating Agreement and 6 *Del. C.* § 18-110, PWA should be removed as Managing Member of Dunes Point; Count II asserts a claim against PWA for breach of the Operating Agreement; Count III charges both Defendants with breaching fiduciary duties they owe to Dunes Point; Count IV involves a claim for waste against both Defendants; and Count V seeks attorneys fees from PWA under the Operating Agreement's fee-shifting provision in the event Plaintiffs succeed in this action.

I first consider Defendants' motion to dismiss, addressing, in turn: (1) Katz's argument that this Court lacks personal jurisdiction over him; and (2) Defendants' request for dismissal based on the Complaint's failure to state a claim upon which relief could be

---

[11] The papers filed as to Defendants' motion to dismiss were Defendants' Opening Brief ("DOB"), Plaintiffs' Answering Brief ("PAB"), and Defendants' Reply Brief ("DRB"). For Defendants' motion to amend the status quo order and Plaintiffs' motion for partial summary judgment, the relevant briefing consisted of Plaintiffs' Brief in opposition to Defendants' motion and in support of Plaintiffs' motion ("Pls.' Summ. J. Opening Br."), Defendants' reply in support of their motion and in opposition to Plaintiffs' motion ("Defs.' Summ. J. Opp'n Br."), and Plaintiffs' reply brief in support of their motion ("Pls. Summ. J. Reply Br.").

[12] A separate letter being issued today discusses the status of Defendants' January 17, 2014 motion to amend the August 28 status quo order, as well as several more recent motions pending in this action.

granted. Finally, I address Plaintiffs' motion for partial summary judgment, seeking the removal of PWA as Managing Member of the Company. For the reasons stated herein, Defendants' motion is denied, except as it relates to Count IV for waste, which I dismiss as failing to state a claim. Plaintiffs' motion also is denied.

## A.    Katz's Motion to Dismiss Under Rule 12(b)(2)

Katz seeks dismissal of the Complaint as it relates to him, contending that he is not properly subject to personal jurisdiction in this Court because he lacks sufficient contacts with the State of Delaware. Plaintiffs respond that this Court has personal jurisdiction over Katz pursuant to 10 *Del. C.* § 3104, Delaware's long-arm statute. Specifically, they argue that Katz has transacted business in Delaware by virtue of his control and management of Dunes Point, and that subjecting Katz to litigation here would comport with due process. Plaintiffs also contend that personal jurisdiction over Katz is appropriate under 6 *Del. C.* § 18-109, Delaware's limited liability company statute.

### 1.    Standard of Review and Applicable Legal Principles

On a motion to dismiss under Court of Chancery Rule 12(b)(2), the plaintiff has the burden of showing a basis for the Court's jurisdiction over the non-resident defendant.[13] In resolving the issue of personal jurisdiction over a non-resident, Delaware Courts apply a two-step analysis, determining: (1) whether a statute authorizes service of process on that defendant; and (2) whether subjecting the non-resident defendant to

---

[13]    *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 437 (Del. 2005); *Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 2130607, at *14 (Del. Ch. Aug. 26, 2005).

10

jurisdiction in Delaware comports with the Due Process Clause of the Fourteenth Amendment.[14]   In conducting this analysis, the Court may consider the pleadings, affidavits, and any discovery of record.[15]  If no evidentiary hearing has been held, as is the case here, the plaintiffs need only make a *prima facie* showing of personal jurisdiction, and are entitled to all reasonable inferences that can be drawn from the record.[16]

## 2.    Personal Jurisdiction Over Katz Under the Long-Arm Statute

The relevant sections of Delaware's long-arm statute provide that a Delaware court:

> may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent (1) Transacts any business or performs any character of work or service in the State . . . [or] (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State . . . .[17]

This statutory empowerment "is to be broadly construed to confer jurisdiction to the maximum extent possible under the Due Process Clause."[18]

---

[14]   *Hercules Inc. v. Leu Trust & Banking (Bahamas) Ltd.*, 611 A.2d 476, 480 (Del. 1992).

[15]   *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007).

[16]   *See id.*

[17]   10 *Del. C.* § 3104(c).

[18]   *Hercules Inc.*, 611 A.2d at 480.

Katz is not a Delaware resident, has never been to Delaware, and does not own real property or pay taxes here.[19] His only contacts with the State appear to be his actions as the sole managing member of PWA, which in turn is the sole managing member of Dunes Point. Katz therefore either directly or indirectly controlled the management of Dunes Point from its inception until the current disputes arose in 2012.[20] The Operating Agreement states that PWA was formed as a single purpose entity to be the Managing Member of the Company.[21] The Agreement, which Katz signed as manager of PWA, further provides that Dunes Point's members, including PWA, "hereby agree to operate the Company as a Delaware limited liability company . . . ."[22] Katz is Dunes Point's registered agent in the State of Kansas.[23]

Katz executed multiple documents related to Dunes Point between June and December 2006, when Dunes Point and the Project were getting off the ground. Plaintiffs identified at least 13 examples, including a mortgage loan and related documents, purchase and sale agreements, and various certificates, assignments, and agreements pertaining to the operation of the residential property business at the

---

[19] Affidavit of Ward Katz ("Katz Aff.") ¶ 5.

[20] PAB 9; Katz Interrog. Answers Nos. 17-18.

[21] OA § 3.1.

[22] OA § 2.1.

[23] Transmittal Affidavit of Dawn Kurtz Crompton ("Crompton Aff.") Ex. 2.

12

Project.[24]   In addition, Katz was listed as Dunes Point's principal manager in a client information form;[25] had sole authority to draw checks from Dunes Point's bank account;[26] mailed Dunes Point's Delaware partnership returns;[27] and signed checks for the Company's Delaware franchise tax payments.[28]   Katz also signed and submitted Dunes Point's tax returns, and states that because PWA had the sole authority to do so, he alone could carry out that function.[29]

These facts support Plaintiffs' contention that Katz "transacted business" in Delaware for purposes of 10 *Del. C.* § 3104(c), and therefore is subject to the jurisdiction of this Court.  In *Albert v. Alex. Brown Management Services, Inc.*, this Court exercised personal jurisdiction over two individual non-residents of Delaware in circumstances similar to this case.[30]   The defendants there were managing members of DCIP, a Tennessee limited liability company, which was the general partner of a defendant Delaware limited partnership fund, and the "sub-advisor" of another such fund.[31]   In

---

[24]    Crompton Aff. Ex. 3; PAB 7-9.

[25]    Crompton Aff. Ex. 4.

[26]    Katz Interrog. Answers Nos. 23-24.

[27]    *Id.* No. 31

[28]    Crompton Aff. Ex. 6.

[29]    Katz. Interrog. Answers Nos. 19, 29, 30.

[30]    2005 WL 2130607, at *15 (Del. Ch. Aug. 26, 2005).

[31]    *See Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 1594085, at *1 (Del. Ch. June 29, 2005).

13

those capacities, DCIP was responsible for the day-to-day management of the funds; the individual defendants were, in turn, responsible for managing DCIP.[32] This Court denied the individual defendants' Rule 12(b)(2) motion to dismiss, ruling that it had personal jurisdiction over them because DCIP had participated in the formation of the Delaware entities, was primarily responsible for managing these entities, and received millions of dollars in fees to do so.[33] Based on that record, the Court found that the individual defendants' control of DCIP was sufficient to constitute "transacting business" under Section 3104(c) of the Delaware long-arm statute.[34]

Like the individual defendants in *Albert*, Katz at all relevant times has controlled and managed a foreign LLC that is the managing member of the Delaware business entity at the center of this dispute. Thus, he was the principal manager and operator of that Delaware entity's affairs. Defendants seek to distinguish *Albert* by arguing that Katz was not "involved in the formation of the Company as a Delaware entity," emphasizing that Katz did not sign Dunes Point's certificate of formation as an LLC.[35] This Court's decision in *Albert*, however, did not establish a requirement that a non-resident manager of a Delaware business entity personally must effectuate the legal formation of that entity to be subject to personal jurisdiction in the Delaware courts. The Court there engaged in

---

[32]     *Id.* at *5.

[33]     *Albert*, 2005 WL 2130607, at *15.

[34]     *Id.*

[35]     DOB 14.

14

a context-specific analysis in which the defendants' participation in the formation of the Delaware entities was one factor among several that supported the application of Section 3104(c).[36] The mere fact that neither Katz nor PWA filed the documents related to Dunes Point's formal creation as a Delaware entity does not place them outside of this Court's jurisdiction. That alleged deficiency is outweighed in this case by facts demonstrating Katz's control, through PWA, over the management of Dunes Point from the outset of its existence. Thus, on the record before me, I am satisfied that Plaintiffs have made a *prima facie* showing that this Court has personal jurisdiction over Katz by virtue of his transacting business under Section 3104(c) of the long-arm statute.[37]

I also conclude that exercising personal jurisdiction over Katz would comport with Due Process. The focus of the relevant Due Process "minimum contacts" inquiry is whether a non-resident defendant "engaged in sufficient minimum contacts with the State of Delaware to require it to defend itself in the courts of the state consistent with the traditional notions of fair play and justice."[38] The non-resident defendant's contacts with

---

[36] *Albert*, 2005 WL 2130607, at \*15; *see also RJ Assocs., Inc. v. Health Payors' Org. Ltd. P'ship, HPA, Inc.*, 1999 WL 550350, at \*5 (Del. Ch. July 16, 1999).

[37] Plaintiffs also contend that personal jurisdiction exists over Katz under 6 *Del. C.* § 18-109(a), which authorizes service of process on the managers of Delaware limited liability companies. Specifically, they argue that Katz is a "manager" of Dunes Point for purposes of Section 18-109(a) because he "participate[d] materially in the management of the limited liability company." Plaintiffs make a strong argument in this regard, but I need not decide the question, because I find that Katz is subject to personal jurisdiction under the Delaware long-arm statute.

[38] *Albert*, 2005 WL 2130607, at \*15 & n.70 (citing *AeroGlobal Capital Mgmt., LLC*, 871 A.2d at 440; *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).

this State "must rise to such a level that it should reasonably anticipate being required to defend itself in Delaware's courts," and "must relate to some act by which the defendant has deliberately created obligations between itself and [this] forum."[39] The consequence of such activity is that the non-resident defendant is "shielded by the benefits and protection" of Delaware law and it is not unreasonable to require the defendant to submit to jurisdiction here.[40]

In *Albert*, this Court found the Due Process element of the personal jurisdiction analysis satisfied because the non-resident defendants in that case had managed the Delaware entities at issue. The Court concluded that "[w]hen a person manages a Delaware entity, and receives substantial benefit from doing so, he should reasonably expect to be held responsible for his wrongful acts relating to the Delaware entity in Delaware."[41] In support of his Rule 12(b)(2) motion to dismiss, Katz seeks to distinguish *Albert* on this point, contending that while the defendants in *Albert* had received millions of dollars in fees, thereby "substantially benefitting" from their management of the Delaware entities, Katz has received less than $77,000 for his management of Dunes Point through PWA.[42] The Court's reasoning in *Albert*, however, did not hinge solely on

---

[39]     *Albert*, 2005 WL 2130607, at *15 (citing *Sternberg v. O'Neil,* 550 A.2d 1105, 1120 (Del. 1988)).

[40]     *Id.* (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (U.S. 1985); *Sternberg*, 550 A.2d at 1120).

[41]     *Albert*, 2005 WL 2130607, at *16.

[42]     DRB 12.

16

the dollar amount of the benefit the defendants reaped from managing a Delaware entity. The Court considered the defendants' active management and control of the Delaware business entity to be salient, in part, because of the monetary benefit they received, but also because of "the important state interest that Delaware has in regulating entities created under its laws, and how that interest could only be served by exercising jurisdiction over those who managed the Delaware entity."[43]

The same reasoning applies here. Katz's active management of Dunes Point through PWA places him in an analogous position to the defendants in *Albert*. It is reasonable to infer from the facts alleged in the Complaint that Katz expected a healthy monetary return—*i.e.*, well in excess of $77,000—from his management of Dunes Point through PWA. In any event, even if Katz's premise here—that below a certain dollar amount of benefits, a non-resident defendant may avoid personal jurisdiction in Delaware—were not flawed, the current record indicates that Katz had a financial interest in Dunes Point's operations beyond his role as managing member of PWA. At a minimum he owns DRS, which for over six years received fees for serving as Property Manager for the Company. In sum, because Katz voluntarily undertook to manage a Delaware limited liability company, received benefits for so doing, and now is accused of causing damage to Plaintiffs arising directly out of his management of the Company, it is

---

[43]     *Albert*, 2005 WL 2130607, at *16 (citing *In re USACafes, L.P. Litig.*, 600 A.2d 43, 52 (Del. Ch. 1991) (Allen, C.)).

17

reasonable and comports with due process to require him to answer for that alleged wrongdoing in this Court. I therefore deny Katz's motion to dismiss for lack of personal jurisdiction.

### B.      Defendants' Motion to Dismiss under Rule 12(b)(6)

Defendants seek dismissal of the entire Complaint for failure to state a claim upon which relief can be granted. Having considered the parties' arguments, I conclude, in light of the applicable standard of review and the abbreviated record currently before me, that the Complaint states a legally sufficient claim as to Counts I, II, III, and V, but not as to Count IV.

### 1.      Standard of Review

A court should deny a motion to dismiss under Rule 12(b)(6) "unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible to proof."[44] In determining whether the Complaint meets this pleading standard, this Court will draw all reasonable inferences in favor of Plaintiffs, "accept all well-pleaded factual allegations in the Complaint as true, [and] accept even vague allegations in the Complaint as 'well-pleaded' if they provide the defendant notice of the claim."[45] The Court, however, need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[46]

---

[44]    *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011).

[45]    *Id.*

[46]    *Price v. E.I. duPont de Nemours & Co., Inc.*, 26 A.3d 162, 166 (Del. 2011).

18

## 2. Counts I and II

In Count I of the Complaint, Plaintiffs seek declaratory relief against PWA pursuant to 6 *Del. C.* § 18-110(a), which states in relevant part: "Upon application of any member or manager, the Court of Chancery may hear and determine the validity of any admission, election, appointment, removal or resignation of a manager of a limited liability company . . . ." Plaintiffs also assert a claim against PWA in Count II for breach of the Operating Agreement. Both of these counts relate to the same group of allegedly wrongful actions. Plaintiffs contend in this regard that: (1) PWA's payment of the Asset Management Fees violated of the Operating Agreement; (2) PWA distributed inaccurate and misleading financial reports to Plaintiffs; (3) PWA failed to provide information to Plaintiffs as required by the Operating Agreement; (4) PWA neglected to maintain the Project, made improper payments related to the Project, and mishandled certain tenant security deposits in breach of the Operating Agreement and PWA's fiduciary duties; and (5) Katz resigned from active involvement in PWA's business in breach of the Operating Agreement's Key Person provision.[47]

Defendants seek dismissal as to both Counts I and II, but their arguments in that regard overlap substantially. They contend that Plaintiffs' claims pertain, at most, to immaterial breaches of the Operating Agreement and are barred by the terms of that

---

[47] In support of their motion for partial summary judgment, Plaintiffs rely on the alleged mishandling of tenant security deposits and Katz's purported abdication from PWA. To avoid duplication, I will defer discussion of those allegations until the next section of this Memorandum Opinion, which deals with Plaintiffs' motion.

Agreement. Specifically, Defendants point to Section 6.3 of the Operating Agreement, which states that "[u]nless for an action constituting 'Cause' [PWA] shall not be liable or obligated to the Members for any mistake of fact or judgment in operating the business of the Company that results in any loss to the Company or its Members."[48] That limitation on liability does not extend, however, to losses caused by "fraud, self-dealing (in contravention of this Agreement), willful misconduct, gross negligence, a wrongful misappropriation or taking by [PWA]," or any other act constituting "Cause."[49] The Operating Agreement defines "Cause" as including breaches of fiduciary duty, willful misconduct, impermissible self-dealing, gross negligence, or any material breach of the Agreement.[50] Based on these provisions, Defendants argue that Plaintiffs are not entitled to relief under any reasonably conceivable circumstances, because the Complaint lacks allegations rising to the requisite level of culpability.

To state a claim for breach of contract under Delaware law, a plaintiff must allege the existence of a contract, the breach of an obligation imposed by that contract, and resultant damage to the plaintiff.[51] Based on the record before me, I conclude that the Complaint's factual allegations conceivably could support a claim for breach of the Operating Agreement and removal of PWA as Managing Member. Without assessing

---

[48] OA § 6.3.

[49] *Id.*

[50] OA § 6.4(a)-(c).

[51] *Kuroda v. SPJS Hldgs., L.L.C.,* 971 A.2d 872, 883 (Del. Ch. 2009).

20

every allegation Plaintiffs make, I find that the averments as to improper payment of the Asset Management Fees, misleading financial reports, and mismanagement of the Project conceivably could support their claims for declaratory relief in Count I and breach of contract in Count II.

With regard to the Asset Management Fees, Defendants do not deny those fees were paid, but rather contend that even if the payments were wrongful, they were not significant enough to defeat the essential purpose of the Agreement. They argue, therefore, that Plaintiffs have alleged nothing more than a technical, immaterial breach, which is insufficient to qualify as "Cause" for removal under the Operating Agreement.[52] The materiality of an alleged breach of contract, however, is a question of fact generally not suitable for disposition in the context of a motion under Rule 12(b)(6).[53] Plaintiffs will have the evidentiary burden of showing that payment of the Asset Management Fees was a material breach of the Operating Agreement, but the non-conclusory allegations of the Complaint raise at least a colorable claim that the repeated payment of those fees was wrongful in light of the Company's continuing problems in terms of cash flow and operating income. A more robust factual record must be established for this Court to

---

[52]    DOB 18-19; DRB 13-15.

[53]    *See, e.g.*, *Matthew v. Laudamiel*, 2012 WL 2580572, at \*10 (Del. Ch. June 29, 2012) (citing *Branson v. Exide Elecs. Corp.,* 645 A.2d 568, 1994 WL 164084, at \*2 (Del. 1994) (TABLE)); *see also I/Mx Info. Mgmt. Solutions, Inc. v. MultiPlan, Inc.*, 2013 WL 3322293, at \*8 (Del. Ch. June 28, 2013) (denying motion to dismiss claim for declaratory relief and requiring further proof as to materiality of an alleged breach).

determine whether Net Cash Flow from Operations existed to justify payment of the Asset Management Fees, and if not, whether those payments individually or in the aggregate were sufficiently harmful to the Members of Dunes Point to be characterized as a "material" breach of the Operating Agreement. At this preliminary stage, I consider it reasonably conceivable that Plaintiffs could prove this aspect of their claim.

The Complaint also pleads sufficient facts from which it reasonably could be inferred that PWA prepared and distributed inaccurate and misleading financial reports. Plaintiffs allege that PWA manipulated cash flow statements by omitting repayments of loan principal and delayed payment of certain bills, both of which may have given Plaintiffs the incorrect impression that the Company's financial position was strong. Similarly, the allegations about increases in Dunes Point's costs for payroll and other expenses, in the face of alleged neglect at the Project, conceivably could support a claim for breach of the Operating Agreement. At the motion to dismiss stage, I cannot rule out the possibility that Plaintiffs could show that these actions constitute gross negligence or willful misconduct, either of which would avoid the limitations on PWA's liability prescribed in Section 6.3 of the Agreement. Defendants' motion to dismiss Counts I and II, therefore, is denied.

### 3. Count III

Count III of the Complaint asserts a claim for breach of fiduciary duty against PWA and Katz. A limited liability company organized under Delaware law "may displace fiduciary duties altogether or tailor their application" by the terms of its

operating agreement.[54] As a default rule, however, managing members of LLCs owe traditional fiduciary duties of loyalty and care.[55] In support of their motion to dismiss Count III, Defendants do not contend that the Operating Agreement limits or eliminates their fiduciary duties. Instead, they contend that the allegedly wrongful actions in this case arise directly out of the Operating Agreement, and therefore sound in breach of contract, not breach of fiduciary duty. In either event, Defendants further argue that the Complaint does not allege sufficient facts to support a claim for breach of fiduciary duty.

I disagree for several reasons. While some of the factual allegations supporting Plaintiffs' breach of fiduciary duty claims overlap with those related to their breach of contract claims, the potential breaches of fiduciary duty are broader in scope than, and therefore not precluded by, the terms of the Operating Agreement.[56] As an initial matter,

---

[54] *Auriga Capital Corp. v. Gatz Props., LLC*, 40 A.3d 839, 856 (Del. Ch.), *aff'd*, 59 A.3d 1206 (Del. 2012).

[55] *See* 6 *Del. C.* § 18-1104 ("In any case not provided for in this chapter, the rules of law and equity, including the rules of law and equity relating to fiduciary duties and the law merchant, shall govern.").

[56] *See Schuss v. Penfield P'rs, L.P.*, 2008 WL 2433842, at *10 (Del. Ch. June 13, 2008) ("[T]his case is distinguishable from those Defendants rely on, which dismissed breach of fiduciary duty claims as duplicative of breach of contract claims that either were substantially identical, such that the fiduciary duty claim would have been 'superfluous,' or involved remedies that were likely to be equivalent, based in part on the company's reassurance that it had sufficient resources to allow for a full remedy.") (internal citations omitted).

23

Katz is not a party to the Operating Agreement, so the alleged wrongdoing attributable to him cannot be coextensive with Plaintiffs' breach of contract claim.[57]

With respect to the allegations against PWA, Defendants' suggestion that the Complaint is devoid of well-pled allegations implicating fiduciary duties is without merit. Plaintiffs allege that Katz and PWA improperly made certain payments and expense reimbursements to DRS.[58] Plaintiffs contend that because Katz owns DRS, he therefore may have been engaged in impermissible self-dealing to the extent he was controlling PWA and through it caused Dunes Point to conduct business with DRS. If, after a more fulsome development of the record, Plaintiffs prove those allegations to be true, the duty of loyalty may be implicated.[59] I reach a similar conclusion as to Plaintiffs' allegations of mismanagement of the Company based on the payment of the Asset Management Fees

---

[57] As the managing member of PWA, which in turn is the Managing Member of Dunes Point, Katz conceivably owes fiduciary duties to Dunes Point as to at least some of the alleged wrongs he committed. *See, e.g.*, *In re USACafes, L.P. Litig.*, 600 A.2d 43, 49 (Del. Ch. 1991) ("The theory underlying fiduciary duties is consistent with recognition that a director of a corporate general partner bears such a duty towards the limited partnership."); *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 670-71 (Del. Ch. 2012) ("[T]his Court has followed *USACafes* consistently, holding that the individuals and entities who control the general partner owe to the limited partners at a minimum the duty of loyalty identified in *USACafes.* This Court's decisions also have extended the doctrine to other alternative entities, such as LLCs and statutory trusts.") (internal citations omitted).

[58] Compl. ¶¶ 52-55.

[59] *See PT China LLC v. PT Korea LLC*, 2010 WL 761145, at *7 (Del. Ch. Feb. 26, 2010) ("[T]he allegation that [the defendant LLC manager] misappropriated [the LLC's] resources for his own benefit and that of his affiliates would be a classic example of self-dealing, and another breach of the duty of loyalty.").

and the misleading financial reports.  Those actions conceivably could rise to the level of gross negligence, such that non-exculpated breaches of the duty of care could be implicated.[60]  As a result, Count III for breach of fiduciary duty is not susceptible to dismissal under Rule 12(b)(6).

### 4. Count IV

Plaintiffs attempt in Count IV to plead that PWA and Katz engaged in waste by failing to maintain the Project's facilities adequately, charging too little for rent, and allowing the Company's profit margin to be impacted as a result.  The standard for corporate waste under Delaware law is "onerous, stringent, extremely high, and very rarely satisfied."[61]  To prove a waste claim, a plaintiff must demonstrate that the challenged transactions were "so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration."[62]  The Complaint's allegations of waste fall well short of this standard.  Even accepting all non-conclusory factual allegations therein as true and drawing all reasonable inferences in Plaintiffs' favor, the challenged actions could not conceivably rise to the level of egregiousness that is contemplated by the case law governing claims of corporate

---

[60]  *See, e.g.*, *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 891 A.2d 150, 192 (Del. Ch. 2005), *aff'd*, 906 A.2d 114 (Del. 2006) ("[L]iability for breaching the duty of care 'is predicated upon concepts of gross negligence.'") (quoting *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244, 253-54 (Del. 2000)).

[61]  *TVI Corp. v. Gallagher*, 2013 WL 5809271, at *17 (Del. Ch. Oct. 28, 2013).

[62]  *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 74 (Del. 2006) (quoting *Brehm*, 746 A.2d at 263).

waste.[63]  As to Plaintiffs' assertion that Defendants charged $100 to $150 per month less in rent than the alleged market rate, for example, nothing in the Complaint or available record suggests that was comparable to charging no rent.  Indeed, because the apartments are alleged to be luxury apartments, it is reasonable to infer that the actual rent still was substantial.  I therefore grant Defendants' motion to dismiss Count IV for failure to state a claim upon which relief could be granted.

### 5.  Count V

Plaintiffs also assert a claim for payment of attorneys' fees and reimbursement of expenses related to bringing this action that is based on the Operating Agreement's fee-shifting provision.[64]  That section of the Agreement provides that in "any action or proceeding to enforce this Agreement," the prevailing party is entitled to recover "its fees and its costs and expenses of suit, including actual attorneys' and consultants' fees" from the non-prevailing party.[65]  Defendants seek dismissal of this Count, contending that since the Complaint fails to state a claim, Plaintiffs are not prevailing parties and, therefore, are not entitled to avail themselves of any fee-shifting under the Agreement. Having denied Defendants' motion to dismiss Counts I-III of the Complaint, I cannot rule out the possibility that Plaintiffs ultimately will qualify as a "prevailing party" for

---

[63]     *See TVI Corp.*, 2013 WL 5809271, at *17.

[64]     *See* OA § 16.14.

[65]     *Id.*

purposes of the fee-shifting provision. For this reason, I also deny Defendants' motion to dismiss Count V.[66]

### C.      Plaintiffs' Motion for Partial Summary Judgment

Defendants moved on January 17, 2014, for a modification of this Court's status quo order. Contemporaneously with their response to that motion, Plaintiffs filed another motion of their own, again seeking partial summary judgment and a declaratory order removing PWA as Managing Member of Dunes Point. In this regard, Plaintiffs contend that Defendants, while managing the operations of the Company, improperly commingled tenant security deposits with the Company's operating funds in violation of a Kansas statute and PWA's fiduciary duties. Plaintiffs also base their motion on Katz's alleged

---

[66]    Defendants argue in the alternative that, if this Court declines to dismiss any part of the Complaint on Rule 12(b)(6) grounds, dismissal is warranted under the doctrine of *forum non conveniens*. *See* DOB 31-33; DRB 30-32. I disagree. "[T]o prevail under the *forum non conveniens* doctrine, a defendant must meet the high burden of showing that the traditional *forum non conveniens* factors weigh so heavily that the defendant will face 'overwhelming hardship' if the lawsuit proceeds in Delaware." *Martinez v. E.I. duPont de Nemours & Co., Inc.*, 86 A.3d 1102, 1104 (Del. 2014). My analysis of the *forum non conveniens* factors suggests that Defendants will face no substantial hardship in continuing to litigate this matter in this forum. The action has been pending for over three years, during which time the parties have litigated numerous motions, including several filed by Defendants and some on which they have prevailed. *See, e.g.*, *supra* note 10; *see also* D.I. Nos. 144, 146 (moving this Court to compel enforcement of certain subpoenas); D.I. Nos. 163, 165 (granting the same). Moreover, this case involves a dispute among members of a Delaware limited liability company that is governed by Delaware law. This Court, therefore, has an interest in the proper adjudication of the legal issues presented. Thus, I reject Defendants' suggestion that it would be reasonable at this late stage to dismiss this case in favor of proceeding in another jurisdiction.

recent abdication from PWA, which they assert violates the Operating Agreement.[67] Defendants oppose Plaintiffs' motion, contending that: (1) the Kansas statute they cited is inapplicable to Dunes Point and the Project; and (2) Plaintiffs' allegations about Katz are contradicted by his sworn affidavit.

Under Rule 56(c), this Court will grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In reviewing a motion according to this standard, I view the evidence presented, and all reasonable inferences from that evidence, in the light most favorable to the non-moving party.[68] The Court also "maintains the discretion to deny summary judgment if it decides that a more thorough development of the record would clarify the law or its application."[69]

Based on the record before me on Plaintiffs' motion for partial summary judgment,[70] I conclude Plaintiffs have not met their burden of showing that there are no genuine issues of material fact and they are entitled to judgment as a matter of law.

---

[67] *See* Pls.' Summ. J. Opening Br. 18-25.

[68] *See, e.g.*, *Roncone v. Phoenix Payment Sys., Inc.*, 2014 WL 6735210, at *3 (Del. Ch. Nov. 26, 2014) (citing *Lyondell Chem. Co. v. Ryan,* 970 A.2d 235, 241 (Del. 2009)).

[69] *Tunnell v. Stokley*, 2006 WL 452780, at *2 (Del. Ch. Feb. 15, 2006) (quoting *Cooke v. Oolie,* 2000 WL 710199, at *11 (Del. Ch. May 24, 2000)).

[70] *See* Affidavit of Steven Cox; Affidavit of Louis Caiola ("Caiola Aff.").

With regard to Plaintiffs' contention that Defendants improperly commingled tenant security deposits in violation of Kansas law, Plaintiffs admit in their Reply Brief that the statute upon which they initially relied in fact does not apply to Dunes Point or the Project, because that statute "as written only applies to mobile home parks."[71] Undeterred, Plaintiffs argue that summary judgment and the removal of PWA still is warranted because commingling tenant security deposits with other operating funds of the Company constituted a breach of Defendants' fiduciary duty of care, and therefore, provides Cause for PWA's removal.[72] As previously discussed, establishing a breach of the duty of care requires proof of gross negligence. Relying on common law fiduciary duty concepts, Plaintiffs appear to allege that Defendants commingled their tenants' security deposits with Defendants' personal funds. PWA, however, is alleged to be a special purposes entity formed to serve as the Managing Member of Dunes Point. Any commingling of funds here apparently occurred in PWA's account. Defendants aver that their handling of that account was appropriate; Plaintiffs strenuously disagree. On the incomplete record presently before me, I cannot conclude as a matter of fact or law that the way in which PWA maintained the Company's tenant security deposits was "without

---

[71]    Pls.' Summ. J. Reply Br. 14 (citing Kan. Stat. Ann. § 58-25, 101 (West 2014)) ("This act shall govern the rental of mobile home space in mobile home parks.").

[72]    Pls.' Summ. J. Reply Br. 15.

29

the bounds of reason,"[73] and therefore, represents a non-exculpated breach of the duty of care.[74] Thus, Plaintiffs are not entitled to summary judgment as to this alleged wrong.

The second ground for Plaintiffs' Rule 56 motion is that PWA has committed an "Impermissible Act" as defined in Section 6.4(d) of the Operating Agreement. According to that provision, PWA could be removed for "Cause" if none of the "Key Persons" were actively involved in the operations of the Managing Member's or the Property Manager's business.[75] Plaintiffs base their allegation that "Katz has been AWOL,"[76] at least in part, on an email from one of PWA's members, David Antebi, which states that "Ward [Katz] is out of the picture" and that Katz resigned from all activities at PWA.[77] The Operating Agreement, however, defines "Key Persons" for all relevant purposes as Ward Katz *and* Peter Katz.[78] The Complaint contains no allegation referring to Peter Katz, and Plaintiffs did not mention him or his involvement, or lack of it, in PWA until their Reply Brief in support of this motion. Plaintiffs, therefore,

---

[73]   *In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 750 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006).

[74]   *See* OA § 6.3.

[75]   *Id.* § 6.4 (d)(vii)-(viii).

[76]   Pls. Summ. J. Br. 23.

[77]   Caiola Aff., Ex. 10.

[78]   OA at B-8.

arguably waived this argument for purposes of their pending motion.[79] Even if I assume that Plaintiffs did not waive this issue, however, Katz has disputed the factual premise of Plaintiffs' Section 6.4(d) argument in a sworn affidavit,[80] and the record otherwise is not sufficiently clear to enable me to resolve this question as a matter of law. Thus, summary judgment is inappropriate, and I deny Plaintiffs' motion on that basis.

## III. CONCLUSION

For the reasons stated in this Memorandum Opinion, Defendants' motion to dismiss is denied in part and granted in part. Specifically, I decline to dismiss Counts I, II, III, and V of the Complaint; I grant Defendants' motion as it pertains to the claim for waste in Count IV. Plaintiffs' motion for partial summary judgment is denied.

**IT IS SO ORDERED**.

---

[79] *See Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived.").

[80] *See* Katz Aff. ¶ 4 ("I was the initial Managing Member of PWA and have continuously acted in that role to this day. The assertion by Plaintiffs . . . that I was not actively involved in PWA's business in September 2013 is false.").